**AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC., and John Roe, Plaintiffs,**

v.

**THE FLORIDA BAR, and the Florida Judicial Qualifications Commission, Defendants.**

**No. TCA 90–40122–WS.**

United States District Court, N.D. Florida, Tallahassee Division.

Aug. 10, 1990.

---

James K. Green, West Palm Beach, Fla., Michael R. Masinter, Nova University Ctr. for the Study of Law, Ft. Lauderdale, Fla., Maurice Rosen, North Miami Beach, Fla., for plaintiffs.

Barry Richard, Roberts, Baggett, Laface & Richard, Jacksonville, Fla., for defendants.

George L. Waas, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for Judicial Qual. Comm.

## ORDER

STAFFORD, Chief Judge.

In this action, plaintiffs seek to prevent defendants from enforcing Canon 7(B)(1)(c) of the Florida Code of Judicial Conduct. Plaintiffs claim that such canon violates their rights under the first and fourteenth amendments of the United States Constitution. Before the court at this time are plaintiffs' motion for leave to proceed under fictitious name (document 1, number 7) and plaintiffs' motion for a temporary restraining order or, in the alternative, motion for preliminary injunction (document 1, number 8). Defendants have responded in opposition to the motion for preliminary injunction (document 1, number 11, and document 3), and plaintiffs have filed a

reply (document 2). No party has requested oral argument.

## BACKGROUND

Defendants in this action are The Florida Bar and the Florida Judicial Qualifications Commission. The Judicial Qualifications Commission is vested with jurisdiction to recommend to the Florida Supreme Court that a member of the judiciary be reprimanded or removed from office for conduct in violation of the Code of Judicial Conduct. *See* Fla. Const. art. 5, § 12. The Florida Bar is charged with the task of enforcing the Rules of Professional Conduct, Rule 4–8.2 of which provides that "[a] lawyer who is a candidate for judicial office shall comply with the applicable provisions of Florida's Code of Judicial Conduct." Plaintiffs here seek to enjoin defendants from enforcing Canon 7(B)(1)(c) of the Code of Judicial Conduct, which provides that:

> A candidate, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election ... should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or misrepresent his identity, qualifications, present position, or other fact.

In particular, plaintiffs challenge that portion of the canon which proscribes discussion of "disputed legal or political issues."

Plaintiff American Civil Liberties Union of Florida, Inc. (hereafter "ACLU") is a nonpartisan organization dedicated, *inter alia*, to the preservation and advancement of free speech. The ACLU claims that Canon 7(B)(1)(c) operates to severely limit the rights of its members to receive information about judicial candidates, including Roe and his opponent. Plaintiff Roe is a candidate for judicial office in Citrus County, Florida, and as such, has expressed an interest not only in announcing his views on disputed legal and political issues but also in criticizing the conduct of the incumbent judge. Even if criticism of the incumbent were not itself proscribed by Canon 7(B)(1)(c), Roe maintains that he cannot engage in such criticism without announcing what he believes to be the limits on the conduct and discretion of a sitting judge. Any announcement of the sort, according to Roe, would likely entail discussion of "disputed legal and political issues"—the scope of which is so overbroad and/or vague as to give no notice of the dividing line between fair comment and impermissible speech. He, therefore, is especially interested in protected himself from enforcement of Canon 7(B)(1)(c).

## MOTION FOR LEAVE TO PROCEED UNDER FICTITIOUS NAME

■ Rule 10(a) of the Federal Rules of Civil Procedure provide that "[i]n the complaint the title of the action shall include the names of all the parties." Only in exceptional circumstances have courts permitted plaintiffs to use fictitious names. *Doe v. Stegall,* 653 F.2d 180 (5th Cir.1981) (listing factors to be considered by a court in deciding whether to permit party anonymity). The court has reviewed these factors and has concluded, under the facts here, that the need for party anonymity does not overcome the presumption of disclosure mandated by procedural custom. Accordingly, plaintiffs' motion for leave to proceed under fictitious name is denied.

## MOTION FOR PRELIMINARY INJUNCTION

In the Eleventh Circuit, a preliminary injunction will issue when the movant shows each of the following: (1) the movant is likely to succeed on the merits; (2) the movant will suffer irreparable harm if injunctive relief is not granted; (3) the benefits the injunction will provide to the movant outweigh the harm caused to the nonmovant; and (4) issuance of the injunction will not harm public interests. *Callaway v. Block,* 763 F.2d 1283, 1287 (11th Cir. 1985); *Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir.1974).

## A. *Likelihood of Success on the Merits*

■ Plaintiffs contend that Canon 7(B)(1)(c) violates their first and fourteenth amendment rights to freedom of speech. They argue that the threat of enforcement has the effect of chilling judicial candidates' free speech, because the canon—both vague and overbroad—provides no notice as to the nature of the speech which is proscribed. They claim that the canon is not the least restrictive means for achieving the state's interest—an interest which they contend is not sufficiently compelling to justify the resulting intrusion on expression.

Defendants respond that it is difficult to conceive of a more compelling state interest than the maintenance of public confidence in the objectivity of its judiciary. Recognizing that judges determine individual cases based upon facts and the law rather than upon personal convictions, defendants suggest that announcement by a judicial candidate of his views on disputed legal or political issues necessarily implies that the rulings of the candidate, once elected, will be influenced by those opinions. Such an implication, defendants posit, would undermine public confidence in the judiciary.

■ While recognizing that the state has a duty to regulate the conduct of the bar and the judiciary, the court understands that defendants' regulations must be subjected to an increasingly strict level of scrutiny as they move closer to impairing core first amendment values. *Morial v. Judiciary Comm'n*, 565 F.2d 295 (5th Cir. 1977), *cert. denied*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). Where, as here, a regulation goes so far as to restrict speech because of its content, there is a strong presumption that the regulation is unconstitutional. A court must strictly scrutinize such a regulation, requiring the state to bear the burden of showing that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).

■ This court has little trouble concluding that states need not treat candidates for judicial office the same as candidates for other elective offices. As the Fifth Circuit has noted, a state may regulate would-be judges differently, if for no other reason, because the judicial office is different in key respects from other offices. *Morial*, 565 F.2d at 305. For example:

[T]he contours of the judicial function make inappropriate the same kind of particularized pledges of conduct in office that are the very stuff of campaigns for most non-judicial offices. A candidate for the mayoralty can and often should announce his determination to effect some program, to reach a particular result on some question of city policy, or to advance the interests of a particular group. It is expected that his decisions in office may be predetermined by campaign commitment. Not so the candidate for judicial office. He cannot, consistent with the proper exercise of his judicial powers, bind himself to decide particular cases in order to achieve a given programmatic result.

*Id.* Furthermore, in a contest between lawyers for a judicial office the integrity of which is a matter of significant public concern, a state may require candidates to maintain a higher standard of conduct than can be expected of candidates in other types of elective contests. Lawyers and judges are members of a privileged and responsible profession, and their obedience to the profession's ethical precepts may require abstention from what in other circumstances would be constitutionally protected behavior.

Nevertheless, a person does not surrender his constitutional right to freedom of speech when he becomes a candidate for judicial office. A state cannot require so much. Indeed, when a state decides that its trial judges are to be popularly elected, as Florida has done, it must recognize the candidates' right to make campaign speeches *and* the concomitant right of the public to be informed about the judicial candidates. As mentioned previously, only when a *compelling* state interest is implicated can the state burden the candidates'

exercise of free speech. Even then, that compelling interest must be served by regulations so narrowly drafted and strictly applied that they do not unnecessarily infringe upon the candidates' first amendment rights.

While the court agrees with defendants in this case that the State of Florida has a compelling interest in protecting the integrity of the judiciary, it cannot agree that a prohibition of *all* discussion of disputed legal and political issues is the most narrowly drawn means of protecting that interest. The canon at issue here does more than proscribe untruthful or deceptive announcements, or announcements concerning specific cases, or announcements which might be construed as particularized pledges of conduct, or announcements limited in some other relevant manner. Except for information about the candidates' background, it effectively proscribes announcements on almost every issue that might be of interest to the public and the candidates in a judicial race.

Perhaps it is worth noting that in a different yet related context, many states once imposed a complete ban on attorney advertising—in part because it was thought that advertising would undermine the public image of a dignified profession and would inevitably mislead the public. Rejecting such reasons for an advertising ban imposed by the Arizona Bar, the Supreme Court held that blanket suppression of attorney advertising is violative of the first amendment. *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). Suggesting that the public was being underestimated, the Court said that if the naivete of the public causes attorney advertising to be misleading, the proper remedy is more disclosure of information rather than less. The justices wrote: "We view as dubious any justification that is based on the benefits of public ignorance." 433 U.S. at 375, 97 S.Ct. at 2704, 53 L.Ed.2d at 830.

In a more recent case dealing with attorney advertising, the Court once again emphasized that there is a presumption favoring disclosure of information over conceal-

ment, for "disclosure of truthful, relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information." *Peel v. Attorney Registration and Disciplinary Comm'n,* — U.S. —, —, 110 S.Ct. 2281, 2291, 110 L.Ed.2d 83, 99 (1990) (holding that a lawyer may advertise his or her certification as a trial specialist). Further, the Court said that in a case involving attorney advertising, the presumption favoring disclosure over concealment is fortified by the separate presumption that members of a respected profession are unlikely to engage in misleading or deceitful practices. — U.S. at —, 110 S.Ct. at 2292, 110 L.Ed.2d at 100. As the Court wrote in *Bates:*

> It is at least somewhat incongruous for the opponents of advertising to extol the virtues and altruism of the legal profession at one point, and, at another, to assert that its members will seize the opportunity to mislead and distort. We suspect that, with advertising, most lawyers will behave as they always have: They will abide by their solemn oaths to uphold the integrity and honor of their profession and of the legal system.

433 U.S. at 379, 97 S.Ct. at 2707, 53 L.Ed.2d at 833.

To be sure, this case is different from the attorney advertising cases. Nonetheless, the lessons to be learned from those cases can provide some insight here. As in the advertising cases, there should be a presumption in this case that disclosure of information is better than concealment. Yet Florida, while entrusting its citizenry with the responsibility of electing its trial judges, has severely limited the information to be used by those citizens in discharging that responsibility. In fact, the electorate must choose its judges based upon little more than biographical data. Defendants argue that anything more would be unnecessary, that information concerning a candidates' views on disputed legal or political issues is not only irrelevant to the electorate's decisionmaking process but, worse, would undermine the public's confidence in the objectivity of the judiciary.

Unable to agree, this court believes that here, as in the advertising arena, the state underestimates the ability of the public to place the information in its proper perspective. The court also thinks that the state wrongly assumes that members of a respected and learned profession cannot announce their views on legal and/or political issues without undermining the public's confidence in the objectivity of the judiciary. As to relevance, the court is acutely aware that judges routinely exercise their discretion within the confines of the facts and the law. How judges choose to exercise that discretion is a matter of much concern to litigants, lawyers, and the public alike. That concern makes a judicial candidates' views on disputed legal and political issues anything but irrelevant.

In sum, the court finds that defendants have not demonstrated that Canon 7(B)(1)(c) is the least restrictive means for protecting a compelling state interest. The court therefore concludes that plaintiffs are likely to succeed on the merits of their constitutional challenge to said canon.

**B.** *Likelihood of Irreparable Harm*

■ The court also finds that plaintiffs have adequately established that they will sustain irreparable injury unless defendants are enjoined from enforcing Canon 7(B)(1)(c). An injury is irreparable only if it cannot be undone through monetary remedies. *Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir.1981). Any loss of first amendment freedoms, even for minimal periods of time, can constitute irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (where practice of political patronage places restraints upon the freedoms of belief and association, irreparable injury is unquestionable); *Johnson v. Bergland*, 586 F.2d 993 (4th Cir.1978) ("[v]iolations of first amendment rights constitute per se irreparable injury"); *Citizens for a Better Env't v. City of Park Ridge*, 567 F.2d 689 (7th Cir.1975) (where blanket prohibition on canvassing for funds places a restraint upon first amendment freedoms, irreparable injury occurs).

In this case, where the timeliness of campaign speech is particularly important, the harm caused by the restraint placed upon plaintiffs' first amendment freedoms cannot be redressed by an award of monetary damages. Once the election campaign is over, the harm cannot be repaired and the freedoms cannot be retrieved. Irreparable injury must, therefore, be assumed.

**C.** *Balance Between Harm to Plaintiff and Harm of Defendant*

Balanced against the irreparable harm to plaintiffs if defendants are not restrained from enforcing Canon 7(B)(1)(c) is the potential for harm to defendants. Such harm—the inability to seek sanctions against Roe *if* Roe's speech violates the canon—does not outweigh the more serious loss of first amendment freedoms.

**D.** *Balancing of Public Interest*

Finally, the court finds that the public interest will not be disserved by issuance of a preliminary injunction in this case. Not only is it in the public interest to terminate the unconstitutional application of a portion of a canon, it is also in the public interest to permit disclosure of truthful, relevant information helpful to the decisionmaking processes employed by Florida voters in an election of their trial judges.

## CONCLUSION

For the reasons discussed above, it is ORDERED:

1. Plaintiffs' motion to proceed under fictitious name is hereby DENIED (document 1, number 7). Plaintiffs shall immediately file an amended complaint which names the true identity of Mr. Roe.

2. Plaintiffs' motion for a temporary restraining order or, in the alternative, motion for preliminary injunction (document 1, number 8) is hereby GRANTED IN PART, conditioned upon the filing of an amended complaint disclosing plaintiff Roe's true identity.

3. Upon plaintiffs' compliance with paragraph 1 above, defendants shall be preliminarily enjoined from taking any action

to enforce against the individual plaintiff that portion of Canon 7(B)(1)(c) which proscribes announcements of views on disputed legal or political issues.

4. Because defendants have not indicated a risk of monetary loss from the issuance of a preliminary injunction, no bond will be required under Rule 65 of the Federal Rules of Civil Procedure.

DONE AND ORDERED.