**Samuel C. STRETTON**

**v.**

**DISCIPLINARY BOARD OF the SUPREME COURT OF PENNSYLVANIA; Robert H. Davis, Jr.; and Pennsylvania Judicial Inquiry and Review Board.**

**Civ. A. No. 91–1800.**

United States District Court, E.D. Pennsylvania.

April 24, 1991.

Samuel E. Klein, Stefan Presser, Katherine Hatton, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for plaintiff.

David M. Donaldson, Administrative Office of Pa. Courts, Philadelphia, Pa., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWCOMER, District Judge.

This is a civil rights action, filed pursuant to 42 U.S.C. § 1983, in which plaintiff

has moved for a permanent injunction prohibiting enforcement of two provisions of Canon 7 of the Pennsylvania Code of Judicial Conduct. Plaintiff Samuel C. Stretton is a trial lawyer who seeks election to the Court of Common Pleas of Chester County, Pennsylvania. Plaintiff contends that the challenged provisions of Canon 7 violate the First Amendment of the United States Constitution by prohibiting the plaintiff from speaking out on disputed issues and raising funds necessary to disseminate his views effectively.[1] The Court has considered the testimony that has been presented in this case as well as the respective submissions of the parties, and is now prepared to issue its findings and conclusions.

## I. Findings of Fact.

### A. *Introduction.*

1. Plaintiff, Samuel C. Stretton, a licensed Pennsylvania attorney, is a judicial candidate in the May, 1991, primary election for a judicial vacancy on the Court of Common Pleas of Chester County, Pennsylvania. (Plaintiff's testimony).

2. As set forth in his Complaint at paragraph 23 and in Plaintiffs' Exhibit 4 and as amplified by his testimony at trial, plaintiff seeks to *discuss* various issues of judicial administration and public concern with respect to the Court of Common Pleas of Chester County, Pennsylvania.

3. The Democratic Party registers only one of every three to four registered voters in Chester County, and has elected only one of its members to the Chester County Common Pleas bench in the past thirty years. (R80–81).

4. Defendant Disciplinary Board of the Supreme Court of Pennsylvania (hereafter, "Disciplinary Board") is responsible for enforcing the Pennsylvania Rules of Professional Conduct which governs the practice of attorneys.

5. Defendant Robert H. Davis, Jr. is the (acting) Chief Disciplinary Counsel of the Office of Disciplinary Counsel of the Disciplinary Board. (R24).

6. Defendant Judicial Inquiry and Review Board (hereinafter, "JIRB") is responsible for enforcing the Pennsylvania Code of Judicial Conduct. (R122–24).

■ 7. When enforcing either the Pennsylvania Rules of Professional Conduct or the Code of Judicial Conduct, defendants act under color of state law.

8. The Commonwealth of Pennsylvania has chosen to select its judges by popular election. (Pennsylvania Constitution, Article V).

9. Plaintiff seeks to enjoin enforcement, under the First Amendment to the Constitution of the United States, of Canon 7B(1)(c) and 7B(2) of the Pennsylvania Code of Judicial Conduct to the extent that they restrict him from "announc[ing] his views on disputed legal or political issues" and personally soliciting campaign funds.

10. In the absence of such injunctive relief, plaintiff has testified that he will be unable to participate meaningfully in the judicial election in question, and the public will be deprived of the means by which to evaluate the ability of competing candidates.

### B. *The Challenged Provisions of the Code of Judicial Conduct and Rules of Professional Conduct*

■ 11. Rule 8.2 of the Pennsylvania Rules of Professional Conduct ("Pa.R.P. C.") provides, in pertinent part, "A lawyer who is a candidate for judicial office *shall* comply with the applicable provisions of Canon 7 of the Code of Judicial Conduct." *See* Pa.R.P.C. 8.2(c) (emphasis added).

12. Compliance with Pa.R.P.C. 8.2(c) is mandatory. Thus, for attorneys who are judicial candidates, compliance with Canon

---

1. Initially, plaintiff attacked two other provisions of Canon 7 which prohibited him from maintaining a leadership position in the Democratic Party, *see* Canon 7A(1)(a), and identifying himself (except as permitted by law) as a member of that party, *see* Canon 7A(2). Plaintiff has withdrawn his attack on Canon 7A(1)(a) and defendants have conceded that the First Amendment requires that judicial candidates be permitted to identify their party affiliation.

7 of the Code of Judicial Conduct ("C.J.C.") also is mandatory. (R25).

13. In pertinent part, and with emphasis added to indicate the provisions here disputed, C.J.C. Canon 7 provides as follows:

B. Campaign Conduct

(1) A candidate ... for a judicial office....

(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of his duties of the office; *announce his views on disputed legal or political issues;* or misrepresent his identity, qualifications, present position, or other fact.

(2) A candidate ... for a judicial office ... should not himself *solicit* or accept *campaign funds,* or solicit publicly stated support, but he may establish committees of responsible persons ... Such committees are not prohibited from soliciting campaign contributions and public support from lawyers.

C. *Plaintiff's "Views on Disputed Legal Or Political Issues"*

14. In the course of seeking judicial office, plaintiff Stretton desires to announce his views on certain disputed legal or political issues, and to take a personal role in soliciting campaign funds in order to disseminate those views effectively. He intends to comply with all pertinent disclosure requirements and will forego personally accepting any campaign contributions. *See* Canon 7B(2). (R114).

15. Plaintiff served for two and one half years as disciplinary counsel for the Supreme Court of Pennsylvania. (R80). He has represented numerous clients before the Disciplinary Board and JIRB (R85), and writes regularly in various legal publications on the topic of professional ethics. (R82). The Court finds that plaintiff is knowledgeable regarding both the Pa.Rules of Professional Conduct and the Code of Judicial Conduct. (R85—Stretton; R158—Keuch). Moreover, the Court finds credible plaintiff's testimony to the effect that he was "shocked" when informed at the hearing on his motion of defendants'

position that plaintiff's proposed speech does not violate Canon 7B(1)(c).

16. The speech which plaintiff Stretton wishes to engage in does involve his views on disputed legal or political issues (R34–35 —Davis), but does not, under defendants' current stated interpretation, violate Canon 7B(1)(c). (R33—Davis).

17. Among other issues, plaintiff would like to criticize the fact that all of the Chester County Common Pleas judges are from the Republican Party and that this departs from a bipartisan tradition that prevailed in the county until the late 1950's.

18. Additionally, plaintiff desires to announce his views on the following issues, all of which may be characterized for purposes of C.J.C. Canon 7 as being disputed legal or political issues:

(a) the need for election of judges with an "activist" view, and the obligation of judges at every level of the judicial system to look at societal changes when ruling on challenges to existing law;

(b) plaintiff's philosophical views on criminal sentencing and the rights of victims of crime;

(c) plaintiff's views on "reasonable doubt," and how he would apply that standard as an elected judge;

(d) the need to more closely scrutinize the work of district justices (formerly known as justices of the peace) particularly in light of the removal of several such justices in recent years because of improper conduct;

(e) the need for various changes in the judicial procedure of Chester County, including the jury selection process (so that jurors more accurately reflect Chester County's racial composition);

(f) the need for greater sensitivity toward hiring minority lawyers and law clerks, especially by Chester County's judges and district attorney; and

(g) plaintiff's qualifications and those of his opponent as well as the perceived need for a woman judge.

Exhibit P–4. Additionally, plaintiff wishes to give his views on the importance of the right to privacy as a basic constitutional right. (R94).

19. Any prohibitions on plaintiff's speech are particularly problematic regarding the topics of crime and sentencing as to which his well-known history as a criminal defense attorney leaves him vulnerable to the misperception, perhaps widely held and certainly subject to unfair and misleading exploitation, that he is more sympathetic to criminals than to their victims. The Code's prohibition against speaking and offering views on disputed legal and political issues has forced Stretton into offering only self-platitudes to which everyone closes his ears. (R112—Stretton).

20. Defendants have conceded that Stretton engaged in self-censorship and refrained from engaging in perfectly lawful and proper speech because of his interpretations of Canon 7. (R158—Keuch).

### D. *The Chilling Effect of Canon 7*

■ 21. As a judicial candidate, plaintiff has agreed not to make any pledges or promises to conduct himself other than faithfully and impartially, or to resolve disputes that may come before him as a judge in any particular way. (R83). Plaintiff does wish, however, to announce his views on disputed political or legal issues.

22. Plaintiff's speech pertaining to disputed legal or political issues already has been chilled. For example, plaintiff recently was interviewed about a Supreme Court decision which held that the admission of a coerced confession may be harmless error. After providing his opinion about the possible impact of this decision, plaintiff requested that it be deleted from the resulting newspaper article because of his fear of violating Canon 7. (R83). Similarly, plaintiff was afraid to comment on the issues raised in this action when asked to do so by members of the media. (R87).

23. Plaintiff's speech is no less chilled because the defendants have stated at the time of the hearing that they will not seek to discipline him for violating Canon 7 based on the proposed speech outlined above and in plaintiff's complaint. (R87). This is so for four principal reasons. First, plaintiff has not agreed to limit his announcements of his views on disputed legal or political issues to those set forth in ¶ 23 of his complaint; he will not be limited to any such "script." Second, neither Robert H. Davis, Jr., who presently is (acting) Chief Counsel of the Disciplinary Board, nor Robert Keuch, who presently is the Executive Director and Chief Counsel of JIRB, have the ability to bind the Board or their successors to the positions regarding Canon 7 which they have here espoused. (R154—Keuch). Third, neither the Disciplinary Board nor JIRB issues regulations or advisory opinions such that might give assurance to plaintiff that he will not be investigated in the future. (R31; R135). Last, neither JIRB nor the Disciplinary Board is aware of any judicial opinions, administrative guideline, standards, writings or any other authority of any kind supporting the "narrow construction" of the Canon which defendants have urged here. (R31, R36–37—Davis; R87—Stretton; R153—Keuch).

24. In addition to plaintiff, the Court finds that the speech of other judicial candidates (or potential judicial candidates) may be chilled by the provisions of Canon 7 attacked here as overbroad.

### E. *Defendants' Proffered Construction of Canon 7*

■ 25. Defendants argue that the challenged provisions of Canon 7B are not overbroad. With regard to Canon 7B(1)(c), defendants argue that its prohibition of speech on "disputed political or legal issues" is synonymous with the prohibition against making "pledges or promises of conduct in office." (R.30—Davis). Stated otherwise, both the (acting) Chief Counsel of the Disciplinary Board and the Executive director of JIRB contend that the challenged provisions of Canon 7B(1)(c) is no more than a prohibition against "prejudgment of legal and political issues that come before the court as judges." (R29—Davis; *see also* R149—Keuch). The Court finds defendants' reading of Canon 7B(1)(c) to be a strained and tortuous interpretation that is not credible and not one that a judicial candidate can rely upon.

26. Defendants' proffered "narrow construction" of Canon 7B(1)(c) is inconsistent with the investigation of Robert B. Surrick, Esquire, initiated by the Disciplinary Board by letter dated December 30, 1990. Indeed, the testimony of (acting) Chief Counsel Davis in this action is contradicted by the Disciplinary Board's investigation of Mr. Surrick in at least two very important respects.

First, while Mr. Davis testified that a judicial candidate may criticize a court decision as being "bizarre" *without* announcing his views on disputed issues in the manner proscribed by Canon 7B(1)(c) (R138), paragraph 6 of the Disciplinary Board's letter to Mr. Surrick stated that by criticizing specific judicial conduct as "bizarre," he had "expressed [his] views on disputed legal or political issues and further indicated how [he] would perform in office...." Second, Mr. Davis' testimony, that a judicial candidate permissibly may criticize any opinion by the Pennsylvania Supreme Court because it would constitute a "decided legal issue" rather than a "disputed legal issue," (R40–41) was directly controverted by the actions of the Disciplinary Board with regard to Mr. Surrick. Indeed, the specific criticism offered by Mr. Surrick of two Pennsylvania Supreme Court decisions (*i.e.*, that they had accepted "transparent defenses" raised by the judges before them on disciplinary matters) was deemed to be acceptable by Mr. Davis, while testifying on behalf of the Disciplinary Board in this action, yet condemned as violative of Canon 7 by the Disciplinary Board when it wrote to Mr. Surrick in December 1990. (R38–40; Exhibits P5–P7).

27. The December 31, 1990 Disciplinary Board letter to Mr. Surrick was sent on the Board's own motion after eighteen months of "investigation." (R180). Such a letter of investigation is a "serious" matter for a lawyer (R183—Davis) and necessarily reflects the interpretation of Canon 7 given by the Disciplinary Board (*Id.*).

28. Although the Disciplinary Board did not notify Mr. Surrick of its investigation until eighteen months had passed from the time Surrick sent out his June 9, 1989 letter (Exhibit P5), Disciplinary Board Chief Counsel Davis now has effectively conceded, as stated at the hearing on this motion and without any further investigation, that Mr. Surrick's letter did not violate Canon 7B(1)(c). (R39–42).

29. Thus, Mr. Surrick is being investigated by the Disciplinary Board for making statements almost two years ago which the Disciplinary Board now says do not warrant disciplinary action. (R40).

30. Defendants offered no credible explanation for the disparate interpretations of the disputed portions of Canon 7 advanced by the Disciplinary Board in this action versus those advanced by the Disciplinary Board in the investigation of Mr. Surrick. The Court therefore finds that the disputed provisions of Canon 7 invite or, at least permit, arbitrary enforcement and the genuine threat of arbitrary enforcement.

### F. *Personal Solicitation of Campaign Contributions.*

31. As set forth in his Complaint and as he testified at trial, plaintiff seeks to personally solicit campaign contributions. Plaintiff has, however, voluntarily dismissed his claim that he be permitted to personally accept campaign contributions. (Plaintiff's Complaint, paragraphs 30–34, 40; Plaintiff's testimony).

32. Plaintiff has a campaign committee, a campaign chair, and a campaign fund raiser. (Plaintiff's testimony).

33. Plaintiff acknowledges that there could be impropriety or the appearance of impropriety in a judicial candidate being handed money when he or she has solicited it directly from someone, but he says that he would "solicit" it but not "accept" it directly from the donor. (Plaintiff's testimony).

34. Plaintiff admits that he knows that other judicial candidates have raised sufficient campaign contributions to mount a successful judicial campaign without their own personal solicitation and acceptance of

campaign contributions. (Plaintiff's testimony).

35. Plaintiff admits that what every candidate needs is a good fund raiser, but feels that only he personally can raise the funds necessary for his campaign. (Plaintiff's testimony).

36. Plaintiff speculates that much of his inability to raise funds is due to the fact that he is a member of the minority political party in Chester County. (Plaintiff's testimony).

37. In the opinions of both the Chief Counsel/Executive Director of JIRB and the Acting chief Counsel of the Disciplinary Board, the Judicial Canon which prohibits personal solicitation and acceptance of campaign contributions by judges and judicial candidates is to guard against actual corruption of the candidate and coercion of the donor as well as to prevent the appearance of both. (Keuch and Davis testimony).

38. While he is aware that JIRB has never acted upon or made any recommendation concerning the "announced views" language of Canon 7, JIRB's Chief Counsel/Executive Director knows that there have been actions and recommendations concerning allegations of personal solicitation by judicial candidates. (Keuch testimony).

39. In the opinions of both the Chief Counsel/Executive Director of JIRB and of the Acting Chief Counsel of the Disciplinary Board, *anyone other* than the candidate can personally solicit and accept campaign contributions for a judicial candidate. (Keuch and Davis testimony).

40. Acting Chief Counsel for the Disciplinary Board relies on the advice and counsel of the Chief Counsel/Executive Director of JIRB for interpretation of the Pennsylvania Code of Judicial Conduct. (Davis testimony).

41. Canon 7's prohibition on personal solicitation of campaign contributions by a judicial candidate, Canon 7B(2), addresses two substantial goals: the coercive impact on a donor, who contributes or refuses to contribute to a judge or judicial candidate, and the actual sale of justice for political contributions or the appearance of such. (Keuch testimony).

42. In the opinion of the Chief Counsel/Executive Director of JIRB, a judge or judicial candidate can write thank you notes and attend thank you parties in connection with campaign contributions that have already been made. (Keuch testimony).

43. While there are more restrictions that Pennsylvania could place on the solicitation of campaign contributions for judges and judicial candidates, the present restriction balances the need to restrict actual impropriety and the appearance of impropriety against the necessities of raising campaign funds. (Keuch testimony).

44. The Court finds that the present restriction in Canon 7 prohibiting a judicial candidate from personally soliciting campaign funds, but allowing a candidate to raise such funds through a committee and allowing the candidate to send thank you notes and give thank you parties, is the least restrictive alternative short of placing no restrictions at all on the manner in which a candidate raises funds.

45. There is no restriction on the amount of contributions or on who can contribute or solicit except that the candidate or judge cannot personally solicit. (Keuch and Davis testimony).

46. The State of Pennsylvania has a compelling interest in having its judges make impartial decisions that are not based upon, or have the appearance of being based upon, personal financial considerations.

47. Personal solicitation of campaign funds by a judicial candidate can have a coercive impact on a donor and can lead to, certainly, the appearance of corruption if not actual corruption in the judiciary.

II. Conclusions of Law.

1. This Court has jurisdiction over the parties and the subject matter of this lawsuit by virtue of 28 U.S.C. §§ 2201 and 2202.

2. Pa.R.P.C. 8.2(c) and Canon 7 of the Code of Judicial Conduct have the force and effect of law within the Commonwealth of Pennsylvania pertaining to matters of professional ethics. (R25).

### A. *Defendants Are Not Entitled To Eleventh Amendment Immunity.*

3. The Eleventh Amendment bars "federal courts from entertaining suits for damages when a state is the real party in interest." It is "not necessary that the state be named as a party, only that the named party is, in actuality, the *alter ego* of the state." *Blake v. Kline*, 612 F.2d 718, 721 (3d Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980). However, "[t]he existence of Eleventh Amendment immunity depends primarily on the nature of the relief sought and the identity of the alleged constitutional tortfeasor." *Barletta v. Golden Nugget Hotel Casino*, 601 F.Supp. 1495, 1500 (D.N. J.1985). Only when damages or other "retrospective relief is sought must the court ... determine whether [a] claim against the officials in name is against the state in fact." *Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir.1981).

4. Where a plaintiff has sued only those entities charged with enforcing Canon 7 of the Code of Judicial Conduct, and it is undisputed that defendants did not promulgate the challenged Canon, it is clear that defendants lack Eleventh Amendment immunity. *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980).

5. Although the Eleventh Amendment may bar certain awards of damages paid from the state treasury, *see Blake*, 612 F.2d at 722, it does not bar awards of attorneys' fees or expenses incurred in litigation seeking prospective relief. *E.g.*, *Hutto v. Finney*, 437 U.S. 678, 695, 98 S.Ct. 2565, 2576, 57 L.Ed.2d 522 (1978).

### B. *Defendants' Abstention Argument Must Fail.*

6. Abstention is "the exception and not the rule," and courts should be "particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." *Houston v. Hill*, 482 U.S. 451, 467, 107 S.Ct. 2502, 2513, 96 L.Ed.2d 398 (1987).

7. Unless a statute challenged as overbroad is "obviously susceptible of a limiting construction, ... it is the duty of the federal court to exercise its properly invoked jurisdiction" even if the "statute has 'never [been] interpreted by a state tribunal....' " *Hill*, 482 U.S. at 468, 107 S.Ct. at 2513, quoting *Harman v. Forssenius*, 380 U.S. 528, 534–35, 85 S.Ct. 1177, 1181–82, 14 L.Ed.2d 50 (1965).

### C. *Plaintiff's Speech Is Entitled To The Fullest Protection Offered By The First Amendment.*

8. The provisions of Canon 7A(2) do not prohibit a judicial candidate from identifying himself as a member and former leader of a political party, or from commenting upon and criticizing one party domination of the judiciary in a particular county. (R4—stipulation).

9. The First Amendment " 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco Democratic Committee*, 489 U.S. 214, 223, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989), quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625–26, 28 L.Ed.2d 35 (1971). "[D]ebate on the qualifications of candidates [is] integral to the operation of the system of government," *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976) (per curiam), and "at the core ... of the First Amendment freedoms." *Williams v. Rhodes*, 393 U.S. 23, 32, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968). Indeed, "there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, ... [and] the manner in which government is operated or should be operated...." *Mills v. Alabama*, 384 U.S. 214, 218–19, 86 S.Ct. 1434, 1436–37, 16 L.Ed.2d 484 (1966).

10. The electorate cannot become informed, as contemplated by the self-government rationale of the First Amendment, if candidates are not allowed to speak freely. *E.g., Brown v. Hartlage,* 456 U.S. 45, 53, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982). Indeed, for candidates for public office, "public discussion is a political duty...." *Buckley,* 424 U.S. at 53, 96 S.Ct. at 651, quoting *Whitney v. California,* 274 U.S. 357, 375, 47 S.Ct. 641, 648, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring).

11. While a law which limits what people may hear is suspect in any context, *e.g., Virginia State Bd. of Pharmacy v. Virginia Citizens Consumers Council, Inc.,* 425 U.S. 748, 770, 96 S.Ct. 1817, 1829–30, 48 L.Ed.2d 346 (1976), a law that stifles political debate, however, is "particularly egregious." *Eu,* 489 U.S. at 224, 109 S.Ct. at 1020.

12. A restriction on political speech may survive constitutional scrutiny "only if the State shows that it advances a compelling state interest ... and is narrowly tailored to serve that interest." *Id.* at 222, 109 S.Ct. at 1019–20. *Accord First National Bank of Boston v. Bellotti,* 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978).

13. To be narrowly tailored, a law must "operate without unnecessarily circumscribing protected expression," *Brown,* 456 U.S. at 54, 102 S.Ct. at 1529, and be the least restrictive means available to accomplish the state objective in question. *ACLU v. The Florida Bar,* 744 F.Supp. 1094, 1099 (N.D.Fla.1990). *See also Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986) (the same level of scrutiny applies to restrictions on free political association).

14. An election law is unconstitutionally vague if it "fails to give adequate warning of what activities it proscribes or fails to set 'explicit standards' for those who must apply it." *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973) (Hatch Act construction).

15. Even a carefully drawn restriction on political speech may not be upheld unless it addresses a compelling state interest. *See, e.g., U.S. Civil Service Com'n. v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 557–63, 93 S.Ct. 2880, 2886–89, 37 L.Ed.2d 796 (1973) (Hatch Act construction). Theoretical or unproven justifications for restrictions on political speech—no matter how commendable—are rarely, if ever, sufficient. *See, e.g., Brown v. Hartlage,* 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982) (striking down statute that would void an election if a candidate made false campaign promises); *Vanasco v. Schwartz,* 401 F.Supp. 87 (S.D.N.Y.1975) (three judge district court panel struck down statute that prohibited attacks on a candidate's race, sex, religion, or ethnic background), *aff'd without opinion,* 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 630 (1976).

16. The disputed proscriptions of Canon 7 apply to a Candidate's speech no matter where given, including when such speech is offered in traditional public fora. *See, e.g., Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939); *Gregoire v. Centennial School District,* 907 F.2d 1366, 1370–71 (3d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 253, 112 L.Ed.2d 211 (1990).

D. *Canon 7B(1)(c) Unconstitutionally Prohibits Judicial Candidates From Expressing their Views On "Disputed Legal Or Political Issues."*

17. Defendants have testified and argued that the overriding purpose of Canon 7 is to preserve judicial impartiality, or at least its appearance. The challenged provision of Canon 7B(1)(c), however, is not the least restrictive means for achieving that state interest.

18. Recently, another district court enjoined enforcement of a Florida provision identical to C.J.C. Canon 7B(1)(c). It did so based on the following rationale:

> [The court] cannot agree that a prohibition of *all* discussions of disputed legal and political issues is the most narrowly

drawn means of protecting that interest. The canon at issue here does more than proscribe untruthful or deceptive announcements, or announcements concerning specific cases, or announcements which might be construed as particularized pledges of conduct, or announcements limited in some other relevant manner. Except for information about the candidates' background, it effectively proscribes announcements on almost every issue that might be of interest to the public and the candidates in a judicial race.

*ACLU v. The Florida Bar*, 744 F.Supp. 1094, 1098 (N.D.Fla.1990) (emphasis in original).

19. Likewise, the Kentucky Supreme Court, in the context of a disciplinary action, recently held that the subject portion of Canon 7B(1)(c) is unconstitutional. The court did so after noting the extreme overbreadth of the provision.

> Other than allowing a judicial candidate to state a professional history, and promise faithful and impartial performance of duties if elected, the existing Canon strictly prohibits dialogue on virtually every issue that would be of interest to the voting public. Inasmuch as the purpose of an election is to give the electorate the opportunity to become informed on a judicial candidate's qualifications for the position, which would include, among other things, knowledge of the law, and personal views and beliefs, the Canon fails in this respect. Instead, we are encouraging the public to judge candidates for our judiciary by not much more than their personal appearance.

*See J.C.J.D. v. R.J.C.R.*, 803 S.W.2d 953 (Ky.1991).

20. This Court, after careful consideration of the arguments advanced by the parties in the case at bar and examination of all the relevant authorities, finds the decisions in *ACLU* and *J.C.J.D.* to be correct. A state may not compel judicial elections and simultaneously prohibit all debate by judicial candidates. *See also Geary v. Renne*, 911 F.2d 280, 291 (9th Cir.1990) (Reinhardt, J., concurring) ("if the people

of the state want elections for judges, they must also want a fair and full debate on the issues"), *cert. denied,* — U.S. —, 111 S.Ct. 750, 112 L.Ed.2d 771 (1991).

21. Even accepting that Pennsylvania has a compelling interest in preserving the integrity of its electoral process, *cf. Brown,* 456 U.S. at 52, 102 S.Ct. at 1528 (referring to this interest as "legitimate"), Canon 7B(1)(c) is nevertheless unconstitutional because it is drastically overbroad. Just as a state may not prohibit a candidate from making *any* promises to voters, *id.* at 55, 102 S.Ct. at 1529–30, it may not prohibit judicial candidates from announcing any of their views at any time in any setting on disputed legal or political issues. One of the primary purposes of the First Amendment is to protect and facilitate political debate so that citizens will be encouraged to exercise their voting privilege, and hopefully to do so intelligently and knowledgeably. The Court concludes that Canon 7B(1)(c) defeats this purpose and is indeed violative of the First Amendment of the United States Constitution.

22. There are an array of less restrictive means to preserve the fact and appearance of judicial impartiality which do not impose an unconstitutional restriction upon a judicial candidate's First Amendment rights as does Canon 7B(1)(c). *See Boos v. Barry,* 485 U.S. 312, 325–26, 108 S.Ct. 1157, 1166, 99 L.Ed.2d 333 (1988) (approving such comparisons). C.J.C. Canon 3C(1) already requires a judge to "disqualify himself in a proceeding in which his impartiality might reasonably be questioned...." C.J.C. Canon 4, which permits judges to write and speak about "the law, the legal system, and the administration of justice" so long as "in doing so [the judge] does not cast doubt on his capacity to decide any issue that may come before him," could be made applicable to judicial candidates, just as Canon 7 has been. *See* Pa.R.P.C. 8.2(c). Alternatively, Canon 7 could be made inapplicable to "judges who are elected through the political process." *See Pruitt v. Kimbrough,* 536 F.Supp. 764, 767–68 n. 3 (N.D. Ind.1982), *aff'd,* 705 F.2d 462 (7th Cir.1983). As plaintiff has correctly argued, such an exception would eliminate the central para-

dox of Canon 7—the state's "entrusting its citizenry with the responsibility of electing its trial judges," while simultaneously "severely limit[ing] the information to be used by those citizens in discharging that responsibility." *ACLU*, 744 F.Supp. at 1098.

23. As with the decision by the Kentucky Supreme Court, this Court is not persuaded:

> that the language of Canon 7B(1)(c) prohibiting all discussion of "disputed legal issues" by judicial candidates is necessary to prevent campaign statements which may indicate a predisposition or bias in favor of one litigant over another. To specifically prohibit this type of campaign conduct and avoid constitutional concerns, this Canon provision can be rewritten in a much narrower scope to outlaw discussion of pending or future litigation.

*J.C.J.D., supra*, at 955.

24. Moreover, in August 1990, the American Bar Association, which drafted C.J.C. Canon 7, adopted a revised Code of Judicial Conduct which only prohibits judicial candidates from "making statements that commit or appear to commit the candidate with respect to cases, controversies or issue that are likely to come before the court." *See* Canon 5A(3)(d)(ii), ABA Model Code of Judicial Conduct (1990). Related ABA Commentary states that the prohibition of Canon 7B(1)(c) at issue here was stricken because it was an overly broad restriction on speech. Thus, even the drafters of the C.J.C. Canon 7 prohibition at issue in the case at bar believe it to be unconstitutionally overbroad. (Exhibits P2 & P3).

25. Neither defendants nor this Court may "construe" the disputed provisions of Canon 7B(1)(c) in the manner urged here by defendants. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 397, 108 S.Ct. 636, 644–45, 98 L.Ed.2d 782 (1988) ("The key to application of [the saving construction] principle is that the statute must be 'readily susceptible' to the limitation; we will not rewrite a state law to conform it to constitutional requirements.") *See also United States v. Locke*, 471 U.S. 84,

96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985) ("We cannot press statutory construction 'to the point of disingenuous evasion' even to avoid a constitutional question" *quoting Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379, 53 S.Ct. 620, 622, 77 L.Ed. 1265 (1933)).

26. In deciding whether a statute is "fairly susceptible" to a narrowing construction, a court should consider the intent of the statute's drafters. *E.g., DeBartolo Corp. v. Florida Gulf Coast*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988); *United States v. Locke*, 471 U.S. 84, 96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985). To narrow the scope of a statute in contravention to the expressed intent of the framers would usurp the role of the legislature and encroach on the constitutional separation of powers. *Locke*, 471 U.S. at 95–96, 105 S.Ct. at 1793.

27. In this case, the only legislative record from which the intent of the drafters of Canon 7 can be discerned, the Reporters Notes accompanying the 1973 draft of the Model Rules of Judicial Conduct, indicates that the drafters of Canon 7 envisioned the prohibition against announcement of "views of disputed legal or political issues" was to be conceptually distinct from the prohibition against "pledges or promises of conduct in office." *See* E.W. Thode, Reporter's Notes on the 1973 Draft of the Code of Judicial Conduct 98 (1973).

28. In addition, as the *ACLU* Court found, Canon 7B(1)(c) "wrongly assumes that members of a respected and learned profession cannot announce their views on legal and/or political issues without undermining the public's confidence in the objectivity of the judiciary." *ACLU*, 744 F.Supp. at 1099. *See also* L. Snyder, "The Constitutionality And Consequences of Restrictions On Campaign Speech By Candidates For Judicial Office," 35 UCLA Law Rev. 207, 246 (1987) (Canon 7B(1)(c) "constitutes a vote of no confidence in the First Amendment").

29. A state may not limit candidates' presentation to voters so as to disable them entirely from presenting their views on disputed legal or political issues.

"The candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election...." *Buckley,* 424 U.S. at 52, 96 S.Ct. at 651.

■■■ 30. Though the drafting of Canon 7B(1)(c) primarily suffers from over-breadth, it is also unconstitutionally vague in that it gives no notice of what is meant by the prohibited "disputed legal or political issues." This is particularly problematic because Canon 7A(2) permits judicial candidates to speak at political gatherings on their own behalf "insofar as permitted by law." The Reporter's Notes to the ABA Model Rules on which Canon 7 is based suggest that it is the candidate's burden to locate state law that gives him or her such permission. *See* E.W. Thode, Reporter's Notes on Code of Judicial Conduct 96–97 (1973). This burden of proof as well as the resulting guesswork as to what constitutes permissible campaign speech is simply not permissible in the context of core First Amendment freedoms such as are at issue here. *See Broadrick v. Oklahoma,* 413 U.S. 601, 607–08, 93 S.Ct. 2908, 2913–14, 37 L.Ed.2d 830 (1973).

31. In overbroad and vague terms, Canon 7B(1)(c) denies judicial candidates the right to engage in debate of issues of great public concern; it may not do so consistent with the First Amendment. Accordingly, the Court shall grant plaintiff's motion to permanently enjoin defendants' enforcement of the disputed provision of Canon 7B(1)(c).

E. *Canon 7B(2), Prohibiting A Candidate From Personally Soliciting Campaign Funds, Is Constitutional.*

32. Canon 7B(2)'s prohibition of a judicial candidate either personally soliciting or accepting financial contributions is a restriction on conduct not speech; and, to the extent it restricts expression, it does so in the least restrictive manner to assure the state's compelling interest of having judges make impartial decisions that are not based on personal financial considerations. *Fed-*

*eral Elections Commission v. National Conservative Political Action Committee,* 470 U.S. 480, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985).

33. Canon 7B(2) does not restrict expenditures or contributions, nor does it set a limit on the amount or on who can contribute or receive it. *Id.* at 495, 497, 105 S.Ct. at 1467–68, 1468–69.

34. "[T]here [is] a fundamental constitutional difference between money spent to advertise one's views independently of the candidate's campaign and money contributed to the candidate to be spent on his campaign." *Id.* at 497, 105 S.Ct. at 1469.

35. Unlike the cases where the Supreme Court invalidated restrictions on campaign financing because there was an "absence of prearrangement and coordination of an expenditure with the candidate or his agent ...", *id.,* (quotation omitted), in the present case, the prohibition of a judicial candidate personally soliciting contributions "alleviates the danger that expenditures will be given as a quid pro quo for improper commitments from the candidate." *Id.*

36. Plaintiff's challenge to Canon 7B(2) fails on both First Amendment and Equal Protection grounds because it is not a restriction on what can be expended on political views. *See, California Medical Association v. Federal Election Commission,* 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981), but rather, it is only the narrowest possible restriction, specifically that the candidate not personally solicit contributions.

37. Canon 7B(2) sets no restriction on the amount or on who may contribute or solicit; it is thus less restrictive than campaign finance restrictions upheld by the Supreme Court. *Id.; see Austin v. Michigan Chamber of Commerce,* — U.S. —, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990).

38. Canon 7B(2) is narrowly tailored to achieve the compelling state interests of preventing the reality and the appearance of political corruption as well as the additional compelling interest of assuring an impartial judiciary.

39. There is no less restrictive method to remove a judicial candidate from direct influence by the source and the amount of campaign contributions or to remove the coercive effect on the donor or one who refuses to donate.

40. Likewise, the prohibition of personal solicitation removes the ease with which promises to decide a case in a particular way can occur.

41. Just as a state can prevent a candidate from buying votes, it can prevent a judicial candidate from personally soliciting contributions.

42. The Court concludes that, based on the foregoing, the provision of Canon 7B(2), prohibiting a judicial candidate from personally soliciting or accepting financial contributions, is constitutional and will deny plaintiff's motion to permanently enjoin the enforcement of said provision.