**Ray ZELLER, et al., Plaintiffs,**

v.

**THE FLORIDA BAR and The Florida Judicial Qualifications Commission, Defendants.**

**No. TCA 95–40073–MMP.**

United States District Court, N.D. Florida, Tallahassee Division.

Decided April 17, 1995.

Judgement Filed June 16, 1995.

Jerry G. Traynham, Patterson & Traynham, Tallahassee, FL, Nina E. Vinik, Pro Hac Vice, American Civil Liberties Union, Foundation of Florida, Miami, FL, for Ray Zeller, Donna Ballman, Jennifer Coberly, Charles Balli, Cynthia Sherr, American Civil Liberties Union, Reginald Richardson.

Barry Richard, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Tallahassee, FL, George L. Waas, Attorney General's Office, Department of Legal Affairs, Tallahassee, FL, for The Florida Bar, Florida Judicial Qualifications Commission.

### ORDER

PAUL, Chief Judge.

On March 21, 1995, oral argument was heard on Plaintiff's motion for a preliminary injunction (doc. 3) and Defendant Florida Judicial Qualifications Commission's ("JQC") motion to dismiss (doc. 10). Since the hearing, the parties have filed additional memoranda in support of their respective positions (docs. 15, 16, 18).

For the reasons outlined below, Defendant JQC's motion to dismiss (doc. 10) is DE-NIED and Plaintiff's motion for a preliminary injunction (doc. 3) is GRANTED.

**BACKGROUND:**

■ The practice of law and conduct of state judges in Florida are matters solely within the plenary jurisdiction of the Florida Supreme Court. *In re The Florida Bar,* 316 So.2d 45, 47 (Fla.1975) (specific constitutional authority for adoption of ethical codes unnecessary because such authority is an inherent power of judiciary branch)[1]. Pursuant to this power, on September 29, 1994, the Florida Supreme Court adopted a new Code of Judicial Conduct ("Judicial Code") that was more consistent with the American Bar Association's Model Code, and better reflected "present day concerns and responsibilities of Florida judges." *In re Code of Judicial Conduct,* 643 So.2d 1037, 1038 (Fla.1994). The new Judicial Code had an effective date of January 1, 1995. *Id.* at 1040.

The new Judicial Code adopted by the Supreme Court contains additional restrictions on the political activity of judges or candidates for judicial office. Specifically, Canon 7(C)(1) provides that:

A candidate, including an incumbent judge, for a judicial office that is filled by public election between competing candidates shall not personally solicit campaign funds, or solicit attorneys for publicly stated support, but may establish committees of responsible persons to secure and manage the expenditure of funds for the candidate's campaign and to obtain public statements of support for his or her candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from any person or corporation authorized by law. A candidate should not expend funds in furtherance of his or her judicial campaign or establish a committee to solicit contributions or public support *earlier than one year before the general election ....*

*In re Code of Judicial Conduct,* 643 So.2d at 1059–60 (emphasis added)[2]. Canon 7A(3)(c)

**1.** *See* Fla. Const. art. 5, § 15 ("The Supreme Court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of those admitted"); *see also Florida Bar v. McCain,* 330 So.2d 712, 714–16
(Fla.1976) (Supreme Court has jurisdiction to discipline attorney for acts occurring while such attorney held judicial office).

**2.** The Commentary to Canon 7C notes that "[a]lthough Chapter 106, Florida Statutes, does not

further provides that all judges and judicial candidates "shall not authorize or knowingly permit any other person to do for the candidate what the candidate is prohibited from doing under the Sections of this Canon." *Id.* at 1059.

Three groups of plaintiffs challenge the constitutionality of these provisions. The first group of plaintiffs ("Candidates") include Donna Ballman and Reginald Richardson, licensed Florida attorneys who are candidates for judicial office in the September 1996 election. On December 7, 1994, Candidate Ballman declared her candidacy for Circuit Court Judge in and for Dade County, Florida, and began forming campaign and finance committees. On December 8, 1994, Ballman sought an advisory opinion from the Committee on Standards of Conduct Governing Judges ("Committee on Standards")[3] concerning the effect of the new Canon 7 on her candidacy. In a letter dated January 31, 1995, the Committee on Standards advised Candidate Ballman that Canon 7C(1) prohibits her and her campaign committee from

> holding meetings prior to November, 1995, accepting contributions prior to November, 1995, holding fundraisers prior to November, 1995, printing and distributing literature, bumperstickers and endorsement cards prior to November, 1995, accepting endorsements prior to November, 1995, adding members to her campaign and finance committees prior to November, 1995, and otherwise expending funds and soliciting support prior to November, 1995.

Amended Complaint, doc. 7 at ¶ 24 (paraphrasing Committee on Standards response, Ex. A to doc. 1). On December 30, 1994, Candidate Richardson similarly declared his candidacy for Circuit Court Judge in and for Dade County, Florida. However, in light of Canon 7 and the Committee on Standards' advisory opinion, since January 1, 1995, Candidates Ballman and Richardson have not expended or solicited for campaign funds, or

otherwise developed their campaign and finance committees.

The second group of plaintiffs ("Supporters") include Ray Zeller, Jennifer Coberly, Charles Balli, and Cynthia Sherr, registered voters in Dade County who support Ballman's candidacy and are members of Ballman's campaign committee. Supporters of Ballman seek to raise funds and solicit support for her candidacy, but claim they cannot do so because of the prohibitions contained in Canons 7C(1) and 7A(3)(c).

The third group of plaintiffs ("the Public") is represented by the American Civil Liberties Union of Florida, Inc. ("ACLU"), a nonpartisan organization dedicated, inter alia, to the preservation and advancement of free speech. The ACLU and its members desire to receive information about judicial candidates through flyers, literature and other materials, for which campaign funds would have to be spent. The ACLU claims that the proscriptions contained in Canon 7C(1) prevents its members and the Public from receiving this information.

The Florida Bar ("Bar") and The Florida Judicial Qualifications Commission ("JQC"), both Defendants in this action, are intermediate agencies of the Florida Supreme Court responsible for enforcement of the Judicial Code. *See generally McCain,* 330 So.2d at 714 (in disciplinary matters, Bar serves as adjunct agency of Supreme Court with authority to make findings of fact and recommendations not binding on the Supreme Court); *In re LaMotte,* 341 So.2d 513, 516 (Fla.1977) (same rule for JQC). Specifically, Defendant Bar is charged with the responsibility of enforcing the Rules of Professional Conduct, including Rule 4–8.2(b), which provides that lawyers who are candidates for judicial office "shall comply with the applicable provisions of Florida's Code of Judicial Conduct." Similarly, Defendant JQC is vest-

---

address when campaign accounts may be established or campaign solicitations may begin, the time limitation in Section 7C(1) is consistent with the goals of the canons in maintaining the integrity of the judiciary." *In re Code of Judicial Conduct,* 643 So.2d at 1061.

**3.** The Committee on Standards was established by the Supreme Court of Florida under the

Court's constitutional powers, *see* Fla. Const. art. V, §§ 2(b) & 15, for the purpose of issuing "written advisory opinions to inquiring judges concerning the propriety of contemplated judicial or non-judicial conduct." *Petition of the Comm. on Standards of Conduct for Judges,* 327 So.2d 5 (Fla.1976).

ed with jurisdiction to investigate and recommend to the Supreme Court that a member of the judiciary be reprimanded or removed from office for conduct in violation of the Judicial Code. Fla. Const. art. 5, § 12.

Plaintiffs filed the instant action pursuant to 42 U.S.C. § 1983. Plaintiffs request the Court to declare that Canon 7C(1) of the Judicial Code is unconstitutional on its face and as applied to Candidates Ballman and Richardson, and seek permanent injunctive relief prohibiting Defendants from enforcing Canon 7C(1). This Court properly has jurisdiction of this case pursuant to 28 U.S.C. §§ 1343, 2201 and 2202. Venue is appropriate under 28 U.S.C. § 1391.

## DISCUSSION:

### I. DEFENDANT JQC'S MOTION TO DISMISS (DOC. 10):

Defendant JQC moves to dismiss Plaintiff's complaint because it argues it "has neither constitutional nor statutory jurisdiction or authority over plaintiffs as none of them are now judges or judicial candidates" (doc. 10 at 1). At the hearing, counsel for JQC also contended that Plaintiffs have suffered no actual or imminent injury by JQC, and therefore had no standing to attack the JQC's enforcement of Canon 7C(1). JQC accordingly moved for dismissal on the grounds that it is not a proper, indispensable, or necessary party to the action, citing as authority *Florida East Coast Ry. Corp. v. Martinez*, 761 F.Supp. 782 (M.D.Fla.1991).

Plaintiffs responded (doc. 15) by pointing out that both Candidates Ballman and Richardson had declared their candidacy for judicial office prior to the effective date of Canon 7C(1). Plaintiffs also distinguish *Martinez* by pointing out that in that case, the defendants were not found to be proper parties because they were not charged with enforcing the law being challenged. *See* 761 F.Supp. at 784–85. As already noted above, the JQC has such enforcement authority in this case. *See In re LaMotte*, 341 So.2d at 516.

■ The Eleventh Circuit specifically addressed this issue in an earlier challenge to Canon 7B(1), concluding that the JQC is a proper party defendant—even if it has made no attempt to enforce the Judicial Code provision in question—because it is duly empow-

ered to regulate the conduct of the state's judges through enforcement of the Judicial Code. *American Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1490 (11th Cir.1993). Accordingly, JQC's motion to dismiss (doc. 10) is DENIED.

### II. PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (DOC. 3):

Plaintiffs have moved for a preliminary injunction to enjoin Defendants from enforcing the restrictions on judicial campaigns contained in Canon 7C(1) of the Florida Code of Judicial Conduct (doc. 3).

■ A preliminary injunction "is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion.'" *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir.1985) (quoting *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983)). To prevail in their motion for a preliminary injunction, Plaintiffs have the burden of proving: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) a greater injustice will result if the injunction is denied than harm caused by granting the injunction; and (4) the injunction would not disserve the public interest. *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022 (11th Cir.1989). Failure of Plaintiffs to demonstrate one of these elements requires this Court to deny Plaintiffs' motion for a preliminary injunction. *Cafe 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993). Each of these elements will be addressed separately.

### A. Substantial Likelihood of Success on the Merits:

Plaintiffs contend that three distinct restrictions imposed upon them by Canon 7C(1) violate their first and fourteenth amendment rights to freedom of speech. These restrictions include the following: (1) prohibition on expenditure of judicial campaign funds earlier than one year before the general election; (2) prohibition on solicitation of public support for the judicial candidate earlier than one year before the general election, including the establishment of a

committee to solicit such support; and (3) prohibition on solicitation of contributions for the judicial campaign earlier than one year before the general election, including the establishment of a committee to solicit such contributions. *See In re Code of Judicial Conduct*, 643 So.2d at 1059–60. During oral arguments on Plaintiff's motion for injunctive relief, Defendants conceded the first two restrictions were facially unconstitutional. The Court is therefore left to determine the likelihood Plaintiffs will be able to demonstrate the third restriction does not pass constitutional muster.

Plaintiffs argue that solicitation for campaign contributions is protected under the First Amendment. Although Plaintiffs concede that Defendants Bar and JQC have a compelling interest in maintaining the integrity of the judiciary, they contend that the solicitation restriction is nevertheless constitutionally infirm for two reasons: first, it does not promote that compelling interest; and second, it is not the least restrictive means for achieving that interest[4]. Plaintiffs conclude that other restrictions contained in Canon 7C(1)—such as the requirement that judicial candidates not personally solicit for contributions, but indirectly solicit for contributions through campaign finance committees—demonstrate the availability of less restrictive means by which the State can further its compelling interest.

Defendants respond by arguing that the restriction on solicitation for campaign contributions has only a marginal impact on the First Amendment rights of the Candidates and Supporters. Defendants contend the State has a compelling interest in maintaining public confidence in the objectivity of its judiciary. According to Defendants, if sitting judges are permitted to accept campaign contributions during their entire term of office it would, at a minimum, have the appearance of corruption. Defendants assert the solicitation restriction is the least restrictive means to achieve the State's compelling interest. To the extent that the restriction creates a specific ceiling on the total amount of campaign contributions and requires fine tuning, Defendants argue it is not facially invalid under existing case law.

Although the issue of time restrictions on solicitations for and contributions to judicial candidates is one of first impression, this Court is not writing on a clean slate. In the seminal case of *Buckley v. Valeo*, the Supreme Court examined contribution and expenditure limits in the context of The Federal Election Campaign Act of 1971, as amended in 1974. 424 U.S. at 1, 96 S.Ct. at 612. The Court found that such limitations operate in the core of political "speech" protected under the First Amendment[5], noting that "[t]he First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for bringing about of political and social changes desired by the people.'" *Id.* at 14, 96 S.Ct. at 632 (quoting *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)).

According to the *Buckley* court, expenditure limitations directly implicate protected political speech because they "necessarily [reduce] the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Id.* at 19, 96 S.Ct. at

---

4. Plaintiffs also assert that the solicitation restriction invidiously discriminates against challengers and thereby promotes incumbency. On their face, the restrictions contained in Canon 7C(1) apply evenhandedly to incumbents and challengers alike. However, at least one court has found statistical evidence demonstrated that an evenhanded campaign restriction unconstitutionally restricted free speech and favored incumbents over challengers. *See Service Employees Int'l Union v. Fair Political Practices Comm'n*, 747 F.Supp. 580, 588–90 (E.D.Cal.1990) (striking down California Proposition 73 campaign funding provision which measured contribution limitations on fiscal year basis rather than by election), *aff'd*, 955 F.2d 1312 (9th Cir.), *cert. denied*,

505 U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992). Nevertheless, the Court need not address this argument because Plaintiffs have not produced record evidence demonstrating Canon 7C(1) invidiously discriminates against challengers as a class. *See Buckley v. Valeo*, 424 U.S. 1, 31, 96 S.Ct. 612, 641, 46 L.Ed.2d 659 (1976) (per curiam).

5. The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech," U.S. Const. amend. I, and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g., Stromberg v. California*, 283 U.S. 359, 368, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931).

634. The Court stated that expenditure limitations therefore must "satisfy the exacting scrutiny applicable to limitations on core First Amendment rights of political expression." *Id.* at 44–45, 96 S.Ct. at 647. Applying this test, the Court found that no governmental interest was sufficient to justify the restriction on the quantity of political expression imposed by the Act's limitations on campaign expenditures. *Id.* at 55–57, 96 S.Ct. at 652–53. Accordingly, the Court concluded that those limitations were unconstitutional. *Id.* at 58, 96 S.Ct. at 653.

■ On the other hand, the *Buckley* court reasoned that contribution limitations restrict one aspect of the contributor's protected freedom of political association, and not political expression. *Id.* at 24–25, 96 S.Ct. at 637. Specifically, the Court noted that making a contribution serves to affiliate a person with a candidate, and "enables like-minded persons to pool their resources in furtherance of common political goals." *Id.* at 22, 96 S.Ct. at 636. However, the Court also found that imposing limits on the *amount* of contributions "entails only a marginal restriction upon the contributor's ability to engage in free communication" because "[t]he quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing." [6] *Id.* at 20–21, 96 S.Ct. at 635–36 (emphasis added). The Court ruled that "[e]ven a 'significant interference with protected rights of political association' may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement of associational freedoms." *Id.* at 25, 96 S.Ct. at 638 (citations omitted). In upholding the Act's limits on the amount of

contributions, the *Buckley* court held that the Government's purpose in "limit[ing] the actuality and appearance of corruption resulting from large individual financial contributions" was a sufficiently important interest narrowly tailored to avoid abridgement of associational rights. *Id.* at 26–29, 96 S.Ct. at 638–40.

■ In the instant case, two distinct First Amendment rights are being restricted by the prohibitions contained in Canon 7C(1). First, the Canon prohibits Supporters from soliciting the Public for contributions to judicial campaigns earlier than one year prior to an election [7]. This prohibition directly implicates rights of political expression. *See Ryan v. Kirkpatrick,* 669 S.W.2d 215, 218 (Mo.1984) (en banc) (striking down financial disclosure law's prohibition on use of campaign contribution reports for solicitation of funds). Second, the Canon prohibits Supporters from contributing funds to judicial campaigns earlier than one year prior to an election. This prohibition implicates rights of political association, akin to the limitations on contributions addressed in *Buckley. See* 424 U.S. at 24–25, 96 S.Ct. at 637. Both of these prohibitions necessarily have an impact on the amount of the Candidates' campaign expenditures. Although *Buckley* explicitly laid out a distinction between expenditures and contributions and found that expenditures were subject to a higher level of scrutiny [8], both of the Canon's prohibitions would be unconstitutional under even the less stringent level of scrutiny applied to ceilings on contributions.

■ Applying the more lenient standard for limitations on contributions, the Canon's two prohibitions on contributions will only pass constitutional muster if Defendants

---

6. The Court also stated that while ceilings on contributions limit one important means of associating with a candidate, they nevertheless "leave the contributor free to become a member of any political association and to assist personally in the association's efforts on behalf of candidates." *Buckley,* 424 U.S. at 22, 96 S.Ct. at 636.

7. The constitutionality of prohibitions on personal solicitation of campaign contributions by judicial candidates has been previously upheld. *Stretton v. Disciplinary Bd. of S.Ct. of Pa.,* 944 F.2d 137, 144–46 (3d Cir.1991) (Canon 7 provision served compelling state interest in eliminat-

ing appearance of impropriety from judge's personal solicitation of funds from attorneys who would appear before him, and was narrowly tailored to further that interest).

8. *See supra* discussion on *Buckley.* The Supreme Judicial Court of Massachusetts recently noted that the distinction has been questioned by some former members of the *Buckley* Court, and could therefore be subject to refinement or reformulation by the present Court. *Opinion of the Justices to the House of Representatives,* 418 Mass. 1201, 637 N.E.2d 213, 215 n. 2 (1994) (collecting cases).

demonstrate "a sufficiently important interest" and the most narrowly tailored means of achieving that interest. *Buckley,* 424 U.S. at 25, 96 S.Ct. at 638. Plaintiffs conceded during oral arguments that the Defendants have demonstrated a sufficiently important interest—namely, avoiding the actuality or appearance of corruption. Indeed, as noted above, the Court has found prevention of corruption to be the only legitimate and compelling government interests in limiting campaign contributions. *Federal Election Comm'n v. National Conservative Political Action Comm.,* 470 U.S. 480, 497, 105 S.Ct. 1459, 1468, 84 L.Ed.2d 455 (1985) ("[t]he hallmark of corruption is the financial quid pro quo: dollars for political favors"); *Buckley,* 424 U.S. at 26–29, 96 S.Ct. at 638–40 (same); *accord Richman v. Shevin,* 354 So.2d 1200, 1203 (Fla.1977) (same), *cert. denied,* 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).[9]

■ The only remaining questions are whether the Canon's prohibitions employ means designed to achieve the State's compelling interest, and whether those means are narrowly tailored to avoid abridgement of associational rights[10]. *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 786, 98 S.Ct.

1407, 1421, 55 L.Ed.2d 707, *reh'g denied,* 438 U.S. 907, 98 S.Ct. 3126, 57 L.Ed.2d 1150 (1978) (citations omitted); *Buckley,* 424 U.S. at 26–29, 96 S.Ct. at 638–40. Canon 7C(1) includes a blanket prohibition on solicitation for and contribution of funds to judicial campaigns earlier than one year prior to an election. Defendants argue that the prohibition achieves the State's interest in ensuring judges avoid even the appearance of corruption, by preventing all judicial candidates—both incumbents and challengers—from soliciting and receiving campaign contributions several years before an election.

■ As a preliminary matter, Defendants have wholly failed to establish a sufficient nexus between the interest they are trying to further—preventing the actuality or appearance of corruption—to the blanket prohibition on solicitation and collection of judicial campaign contributions for a lengthy period of time. Indeed, the fact that contributors can give the same sum of money to judicial candidates within the one year period prior to an election, which they cannot give outside of that period, demonstrates that Canon 7C(1) does not further the State's compelling interest in preventing corruption[11]. In light of the Canon's restrictions on political ex-

---

9. For a list of sources discussing the potential for bias or the appearance of bias when a judge accepts contributions from those appearing in his or her court, *see generally Breakstone v. MacKenzie,* 561 So.2d 1164, 1168 n. 6 (Fla. 3d DCA 1989), *vacated on other grounds,* 571 So.2d 32 (Fla. 3d DCA 1990).

10. It is well established in this Circuit that candidates for judicial office may be treated differently from candidates for other elected offices. *See Morial v. Judiciary Comm'n,* 565 F.2d 295, 305 (5th Cir.1977), *cert. denied,* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

These more stringent restrictions on judicial candidates do not violate the Equal Protection Clause. *See American Civil Liberties Union of Florida, Inc. v. The Florida Bar,* 744 F.Supp. 1094, 1097 (N.D.Fla.1990); *Adams v. Supreme Court of Pa.,* 502 F.Supp. 1282, 1291 (M.D.Pa. 1980); *Clark v. Burleigh,* 4 Cal.4th 474, 14 Cal. Rptr.2d 455, 841 P.2d 975 (1992) (en banc). Nevertheless, judicial candidates do not surrender their constitutional rights to freedom of speech and association when they run for office,

and the State must still demonstrate its compelling interest is "served by regulations so narrowly drafted and strictly applied that they do not unnecessarily infringe upon the candidate's first amendment rights." *ACLU v. The Florida Bar,* 744 F.Supp. at 1098.

11. Defendants might contend that the prohibition prevents *post-election* contributions that have the actuality or appearance of corruption. Indeed, at least one court has upheld the constitutionality of post-election campaign contributions. *See Ferre v. State,* 478 So.2d 1077 (Fla. 3d DCA 1985) (statutes prohibiting the acceptance and requiring the return of post-election contributions did not violate First Amendment), *aff'd,* 494 So.2d 214 (Fla.1986). In *Ferre,* the Third District Court found the statutes' prohibitions on post-election contributions were narrowly tailored to ensure that the public was informed *before* the election of the identities of the persons contributing to the campaigns of particular individuals. *Id.* at 1081. However, the statutes at issue in *Ferre* are distinguishable from the restrictions at issue in this case because Canon 7C(1) prohibits *pre-election* campaign contributions made more than one year before the judicial election, in addition to prohibiting post-election contributions.

pression and association protected under the First Amendment, *Buckley,* 424 U.S. at 14, 96 S.Ct. at 632, the Court cannot cavalierly accept without proof that the means being used achieve the legitimate ends being sought. Other courts have held that such a failure to establish a nexus is grounds for finding the restriction unconstitutional. *See Meyer v. Grant,* 486 U.S. 414, 426–27, 108 S.Ct. 1886, 1894–95, 100 L.Ed.2d 425 (1988); *Service Employees Int'l Union,* 955 F.2d at 1321; *Barker v. State of Wisconsin Ethics Bd.,* 841 F.Supp. 255, 260 (W.D.Wis.1993).

▮▮▮ Nevertheless, even if Defendants could show a nexus between the State's compelling interest and the means to achieve that interest, they have failed to demonstrate that the prohibitions in Canon 7C(1) are narrowly tailored to avoid abridgement of associational rights. While some courts have upheld prohibitions on contributions by particular groups or individuals under certain circumstances [12], blanket prohibitions on all groups or individuals from making solicitations for and contributions to campaigns are disfavored. *See Bellotti,* 435 U.S. at 790–93, 98 S.Ct. at 1423–24 (striking down Massachusetts criminal statute prohibiting business corporations from making any contributions or expenditures on any ballot questions other than those affecting property, business, or assets of the corporations); *Federal Election Comm. v. Weinsten,* 462 F.Supp. 243, 249 (S.D.N.Y.1978) (interpreting *Buckley* as saying that Congress may not totally prohibit individual contributions). Blanket prohibitions on campaign contributions during par-

ticular pre-election periods of time are also generally unconstitutional. *See State v. Dodd,* 561 So.2d 263, 265 (Fla.1990) [13].

There is a paucity of case law addressing the extent to which temporal prohibitions on solicitation and receipt of contributions by judicial candidates can be narrowly tailored to achieve a compelling governmental interest. However, in *State v. Dodd,* the Supreme Court of Florida addressed a related type of prohibition. The Campaign Financing Act, Florida Statutes § 106.08(8) (1989), prohibited candidates for legislative or statewide office from accepting or soliciting any campaign contribution during a regular or special session of the legislature. Just like the instant case, the Florida Supreme Court found the State had a compelling interest in preventing the actuality or appearance of corruption. 561 So.2d at 265. However, the *Dodd* court held that the state Campaign Financing Act failed to advance this interest through the least intrusive means because it applied to all office-seekers without exception, including "some public officials and candidates who could not possibly be subject to a corrupting quid pro quo arrangement." *Id.* The *Dodd* court also noted that the statute failed to recognize that corrupt campaign practices could occur during periods not encompassed by the statute. *Id.* at 265–66. The Supreme Court of Florida concluded that numerous less restrictive means existed, and therefore struck down the statute as unconstitutional. *Id.* at 266–67. Although Defendants argue that *Dodd* is not on point, their arguments are not persuasive [14].

---

**12.** *See Wachsman v. City of Dallas,* 704 F.2d 160, 173–75 (5th Cir.) (upholding provision of municipal charter prohibiting city employees from making contributions to city council candidates), *cert. denied,* 464 U.S. 1012, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983); *Gwinn v. State Ethics Comm'n,* 262 Ga. 855, 426 S.E.2d 890, 893 (1993) (upholding state Ethics in Government Act provision prohibiting insurance companies from making contributions to insurance commissioner candidates).

**13.** There is at least one instance where a court has upheld blanket prohibitions on contributions to judicial candidates during certain pre-election periods. *See In re Code of Judicial Conduct,* 274 Ark. 581, 627 S.W.2d 1, 2 (1982) (holding that campaign funds may be solicited and accepted on behalf of a judicial candidate beginning 180 days prior to the first election in which he or she is a candidate). However, this decision wholly

failed to address the prohibition's impact on the First Amendment rights of campaign supporters and the general public, and is therefore not persuasive.

**14.** During oral arguments, Defendants made two contentions in distinguishing *Dodd* from the instant case. First, they argued that the statute at issue in *Dodd* was much broader than the Judicial Canon at issue in this case. This argument has some merit, but is not persuasive. The statute at issue in *Dodd,* as noted above, applied to all candidates for state-wide office, including commissioners and judges who had no vote or influence to trade for campaign contributions. 561 So.2d at 265. Canon 7C(1) is narrower in the sense that it applies to individuals who could be put in positions of having campaign contributors appearing before them in court. Nevertheless, Canon 7C(1) is a much broader restriction

Similarly, in the instant case, numerous less restrictive means furthering the State's interest in preventing judicial corruption already exist[15]. Judicial candidates are proscribed from participating in partisan political activity, Fla.Stat. § 105.071 (1993); Florida Code of Judicial Conduct Canons 7A(1), 7C(3), as well as from accepting the assistance of partisan political organizations. *See* Fla.Stat. § 105.09. In addition, judicial candidates cannot "make pledges or promises of conduct in office," or "make statements that commit or appear to commit ... to cases, controversies or issues that are likely to come before the court." Florida Code of Judicial Conduct Canon 7A(3)(d). Furthermore, judicial candidates are foreclosed from personally soliciting campaign funds, and must instead establish separate committees to solicit for and collect campaign contributions. *Id.* at Canon 7C(1). Judicial candidates must also comply with state campaign finance disclosure laws. *See* Fla.Stat. § 105.08(1); Fla.Stat. ch. 106. Finally, the Judicial Code provides that sitting judges should keep informed about their financial interests, and disqualify themselves "in a proceeding in which the judge's impartiality might reasonably be questioned ..." Florida Code of Judicial Conduct Canon 3E.

Finally, a recent advisory opinion by the Supreme Judicial Court of Massachusetts demonstrates that prohibiting solicitations for and contributions to judicial campaigns more than one year prior to an election, has the effect of imposing unconstitutional limits on the quantity of political expression by all three groups of Plaintiffs[16]. *Opinion of the Justices to the House of Representatives,* 637 N.E.2d at 213. The Massachusetts court addressed the constitutionality of a proposed bill that would place an aggregate limit on the total contributions candidates could re-

ceive in nonelection years. *Id.* at 214. The court found that

> [a] cap on total contributions in those years obviously also limits expenditures if the candidate's personal funds are restricted and the candidate has carried over little or no funds from a prior election year. The Bill's provisions thus have the effect of determining the amount of contributions a candidate may receive, and will, in certain circumstances, also place limits on expenditures.... While the Bill does not explicitly set expenditure ceilings, its provisions could have the practical effect of doing so in nonelection years.

*Id.* at 216–17. The court reasoned that "[w]hile a limitation on the amount of a contribution has been considered permissible, legislation that has the effect of prohibiting a contributor from expressing support and affiliation with a candidate for a lengthy period constitutes a significant interference with the right of association." *Id.* at 218 (citation omitted). Applying the more exacting standard outlined in *Buckley* for evaluating restrictions on campaign expenditures, the Supreme Judicial Court therefore concluded the bill would be unconstitutional. *Id.* at 219.

In the instant case, the restrictions in Canon 7C(1) effectively prohibit all solicitations for and contributions to judicial candidates for a significant period of time. These restrictions amount to imposition of an aggregate limit on the total contributions judicial candidates receive during that time— namely, nothing. The Canon therefore has the effect of unconstitutionally limiting political expenditures by Candidates, and thereby restricts the ability of the Public to receive access to information about Candidates' cam-

than the *Dodd* statute because it forecloses *all* contributions and solicitations for contributions more than one year before the judicial election.

The second argument advanced by Defendants—namely, that the Supreme Court of Florida implicitly distinguished the prohibitions in Canon 7C(1) from the prohibitions in *Dodd* and affirmed the constitutionality of Canon 7C(1) when it adopted the new Judicial Code—is clearly without merit. Defendants have already conceded that two of the provisions in the Judicial Code adopted by the Supreme Court of Florida are unconstitutional.

**15.** Plaintiffs argue that the presence of other less restrictive means in the Canon itself, demonstrate that Defendants cannot meet this requirement. However, the *Buckley* court expressly rejected this argument. *See* 424 U.S. at 27–29, 96 S.Ct. at 639–40. Nevertheless, these alternative means provide examples of how the State may prevent judicial corruption without unduly abridging political expression or associational rights.

**16.** *See Buckley,* 424 U.S. at 54–58, 96 S.Ct. at 652–53.

paigns. The Supreme Court has noted that a

> contribution limit thus automatically affects expenditures, and limits on expenditures operate as a direct restraint on freedom of expression.... A limit on contributions in this setting need not be analyzed exclusively in terms of the right of association or the right of expression. The two rights overlap and blend; to limit the right of association places an impermissible restraint on the right of expression.

*Citizens Against Rent Control v. City of Berkeley,* 454 U.S. 290, 300, 102 S.Ct. 434, 439, 70 L.Ed.2d 492 (1981). In addition, the Canon unduly restricts Supporters' rights to associate themselves with their chosen judicial candidate and to engage in protected political expression with the Public through the solicitation for funds.

The prohibitions set out in Canon 7C(1) have a severe impact on political dialogue because they prevent the Candidates "from amassing the resources necessary for effective advocacy." [17]

*Buckley,* 424 U.S. at 21, 96 S.Ct. at 636. Accordingly, the Court finds that Plaintiffs have demonstrated a likelihood of success not only on the merits of the prohibitions on judicial campaign expenditures and solicitation of public support for judicial candidates, but also on the time restrictions on solicitation for and contribution of campaign funds.

### B. Likelihood of Irreparable Harm:

The Court also finds that Plaintiffs have adequately established that they will sustain irreparable injury unless Defendants are enjoined from enforcing Canon 7C(1). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cate v. Oldham,* 707 F.2d 1176, 1189 (11th Cir.1983) (citations omitted). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d

547 (1976); *Cate,* 707 F.2d at 1188 ("[V]iolations of first amendment rights constitute per se irreparable injury.").

In this case, there is no possibility that the harm caused by the restrictions on Plaintiffs' first amendment rights can be later redressed through adequate compensatory or other corrective relief. Indeed, the extent to which Canon 7C(1) effectively abridges the rights of association and political expression of all the Plaintiffs, weighs heavily in favor of finding irreparable harm.

### C. Balance Between Harm to Plaintiffs and Harm of Defendants:

The Court further finds that the harm to Defendants—the potential for taking disciplinary action against a judicial candidate where the actuality or appearance of corruption exists—does not outweigh the more serious harm that will be suffered by all Plaintiffs if Canon 7C(1) is enforced.

### D. Balancing of Public Interest:

Finally, the Court finds that the public interest will not be disserved by issuance of a preliminary injunction. Just as in *ACLU v. The Florida Bar,* it is "in the public interest to terminate the unconstitutional application of a portion of a canon." 744 F.Supp. at 1099. Furthermore, it is also in the public interest to permit members of the public to affiliate themselves with a candidate through campaign contributions, and for Supporters to elicit such contributions from the Public. Similarly, it is in the public interest for Candidates to use contributions and not be shackled by campaign expenditure limits, to engage in protected political expression with the Public. Indeed, such political expression will enable the Public to make more informed decisions in selecting judicial candidates for office.

Since Plaintiffs have sufficiently demonstrated all the prerequisites to issuance of a

---

**17.** In the same context, the *Buckley* court noted that

> virtually every means of communicating ideas in today's mass society requires the expenditure of money. The distribution of the humblest handbill or leaflet entails printing, paper, and circulation costs. Speeches and rallies generally necessitate hiring a hall and publiciz-

> ing the event. The electorate's increasing dependence on television, radio, and other mass media for news and information has made these expensive modes of communication indispensable instruments of effective political speech.

424 U.S. at 19, 96 S.Ct. at 635.

preliminary injunction, their motion for such injunction (doc. 3) is GRANTED.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant JQC's motion to dismiss (doc. 10) is DENIED.

2. Plaintiff's motion for a preliminary injunction (doc. 3) is GRANTED.

3. Defendants are preliminary enjoined from taking any action to enforce the following prohibitions contained in Florida Code of Judicial Conduct Canon 7C(1): (a) prohibition on expenditure of judicial campaign funds earlier than one year before a general election; (b) prohibition on solicitation of public support for the judicial candidate earlier than one year before a general election, including the establishment of a committee to solicit such support; and (c) prohibition on solicitation of contributions for the judicial campaign earlier than one year before a general election, including the establishment of a committee to solicit such contributions.

4. The preliminary injunction shall remain in full force and effect until further order of the Court.

5. Since Plaintiffs are acting on behalf of the public interest and Defendants have failed to demonstrate a risk of monetary loss from the issuance of a preliminary injunction, no bond will be required under Rule 65 of the Federal Rules of Civil Procedure [18].

6. The clerk of the court will send out a discovery order setting a 60 day period for discovery to be conducted. The clerk will also send out a scheduling order setting a pre-trial conference 90 days from the date of this order.

**DONE AND ORDERED.**

### FINAL JUDGMENT

The stipulation for entry of a final judgment and permanent injunction (doc. 25) is APPROVED.

For the reasons set forth in this court's order of April 17, 1995 (doc. 19), Canon 7(C)(1) of the Code of Judicial Conduct of the State of Florida, reported at 643 So.2d 1037, 1059 (Fla.1994) is hereby held to be unconstitutional and the defendants are permanently enjoined from enforcing, or attempting to enforce, any of its terms, conditions, or provisions against the plaintiffs.

The court retains jurisdiction for a period of 60 days for the dual purposes of assessing attorney fees and costs and/or to determine the right of any party to intervene in this action for the purpose of defending the constitutionality of the above challenged provisions of the Code of Judicial Conduct of the State of Florida.

Any application for attorney fees must be filed by the plaintiffs by July 15, 1995.

The Clerk is directed to close this case, subject to the retained jurisdiction for the limited purposes herein specified.

**DONE AND ORDERED.**

---

18. *See City of Atlanta v. Metropolitan Atlanta Rapid Transit,* 636 F.2d 1084 (5th Cir.1981).