Paul VOLLE, et al., Plaintiffs,

v.

Peter B. WEBSTER, et al., Defendants.

No. Civ.A.99–265–P–H.

United States District Court,
D. Maine.

Oct. 1, 1999.

James Bopp, Jr., Raeanna S. Moore, Bopp, Coleson & Bostrom, Terre Haute,

*Berlekamp Farms, Inc.,* 635 F.Supp. 1191, 1195–96 (N.D.Ohio 1986).

IN, John A. McArdle, III, Campbell & McArdle, P.A., Portland, ME, for plaintiffs.

William R. Stokes, Assistant Attorney General, Augusta, ME, for defendants.

Stephen C. Whiting, Whiting Law Firm, P.A., Portland, ME, for Christian Civic League & Christian Action League.

## MEMORANDUM DECISION

HORNBY, Chief Judge.

This "election law" case [1] involves ballot measures, not candidate elections. In November, Maine voters will vote their views on partial-birth abortion (along with eight other ballot initiatives) and Town of Falmouth voters will vote on a charter amendment. No candidates will be elected on either ballot.

Paul Volle is an individual Maine resident. Management Research and Development Association ("MRDA") is Volle's unincorporated business association that ordinarily engages in publishing, printing, typesetting and consulting on manufacturing and quality issues. They both want to solicit money and make expenditures in support of advocacy seeking to influence the outcome of the November statewide and Falmouth ballot questions. If they do so, Maine statutes require them to register with the State as political action committees.

According to Maine's election statute, anyone who spends over $50 on a ballot issue—for example, Volle, if he spends $51 to erect a sign on his front lawn or to hold a koffee klatch or barbecue to urge his neighbors how to vote on one of these ballot questions—becomes a "political action committee." See 21–A M.R.S.A. § 1052(5)(A)(3).[2] He then must appoint a treasurer before actually spending the money, see id. § 1054, and the treasurer must keep records for at least four years, see id. He also must register with the Maine Commission on Governmental Ethics and Election Practices within seven days and disclose to the Commission bank accounts, assets, the position he takes on the issue, anyone who has contributed money, and more. See id. § 1053.

According to the United States Supreme Court, advocacy concerning referendum-type elections of this sort involves "core political speech," and state regulation of election advocacy accordingly requires "exacting scrutiny" to ensure that the regulation is "narrowly tailored" to an "overriding state interest." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 347, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). The Court has reminded us that the premise of the First Amendment is that voters are presumed to be able to assess the persuasiveness of a message and vote a ballot issue up or down on its merits. See id. at 348–49, 115 S.Ct. 1511. Applying the Supreme Court's exacting scrutiny, I conclude that Maine's registration statute as currently written does violate the First Amendment as it applies to individuals like Volle or associations like MRDA.[3]

---

1. At a hearing on September 24, 1999, the parties submitted the case on a stipulated record consisting of the factual allegations of the Verified Complaint; the exhibits attached to the defendants' memorandum in response to the motion for preliminary injunction; and exhibit 1 admitted at the hearing on September 24, 1999. The defendants have raised no challenge to the plaintiffs' standing or to the court's authority to issue the relief requested. Accordingly, I address only the merits of the dispute.

2. A person or association that solicits money and spends over $1,500 is also covered. 21–A M.R.S.A. § 1052(5)(A)(4).

3. The State wisely has not argued that because money (contributions or expenditures) triggers the registration requirement, First Amendment interests are not at stake. The Supreme Court has let there be no doubt on this score:

> the invasion of privacy or belief may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs." Our past decisions have not drawn fine lines between contributors and members but have treated them interchangeably. In Bates, for example, we

## ANALYSIS

Volle and MRDA make two basic arguments against the statute: that in taking a position on these ballot measures they will be engaging solely in issue advocacy, not the support of any candidate for election, and that the First Amendment prohibits Maine from regulating this type of pure issue advocacy in any way, even by registration requirements; that in any event, even if Maine can constitutionally require registration in connection with advocacy on ballot measures that do not involve candidate elections, Supreme Court caselaw limits any such registration requirements to those organizations whose major purpose is the passage or defeat of a ballot measure. The State concedes that Volle's and MRDA's major purpose is not the ballot measure, but contends that the State's regulations really require only the reporting of expenditures and contributions directed to a particular election outcome and

> applied the principles of *NAACP v. Alabama* and reversed convictions for failure to comply with a city ordinance that required the disclosure of "dues, assessments, and contributions paid, by whom and when paid." The strict test established by *NAACP v. Alabama* is necessary because compelled disclosure has the potential for substantially infringing the exercise of First Amendment rights.
> *Buckley v. Valeo*, 424 U.S. 1, 66, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam) (citations omitted. The Court went on to discuss the state interests that might justify a First Amendment incursion.) *See id.* at 66–68, 96 S.Ct. 612.

4. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 ("*Buckley I* "), is the fountainhead of First Amendment election caselaw. That case involved a First Amendment challenge to the Federal Election Campaign Act ("FECA"). The Court carefully distinguished express advocacy of the election or defeat of a specific candidate from the general discussion of political issues, *see* 424 U.S. at 42–44, 78–80, 96 S.Ct. 612, and recognized far more authority in the government to regulate the former than the latter, *see id.* at 19–23, 96 S.Ct. 612. The Court emphasized the distinction in *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 248–49, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). In order to avoid First Amendment problems of vagueness and over-

that, construed in this manner, they pass constitutional muster.

I analyze these two issues as the parties have presented them, then proceed to a third.

### 1. Can There Be Any State Registration Requirement in Connection With Advocacy About a Noncandidate Ballot Measure?

Volle and MRDA argue that any registration requirement at all in a state election that does not involve candidates is *per se* invalid. The State disagrees.

 The Supreme Court's most recent pronouncement in this area of noncandidate elections is *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) ("*Buckley II*").[4] That decision struck down a number of Colorado regulations concerning the state's petition process. In doing so, however, the Supreme Court said

> breadth, *Buckley I* also limited the FECAs' general reporting requirements to political committees that either were controlled by a candidate or whose "major purpose" was the nomination or defeat of a candidate. *See* 424 U.S. at 79, 96 S.Ct. 612. But *Buckley I* was concerned specifically with elections that involved the election of candidates, not elections that involved other ballot measures like referenda.
>
> Only in later cases did the Supreme Court deal with ballot measures other than candidate elections. In *First National Bank of Boston v. Bellotti* 435 U.S. 765, 790, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), it recognized that votes on ballot measures involve less risk of corruption that would justify state regulation than do candidate elections where there is concern to avoid a quid pro quo arrangement between a candidate and the contributor. "Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue." *Id.* at 790, 98 S.Ct. 1407 (citations and footnote omitted); *accord Buckley II*, 525 U.S. at ——, 119 S.Ct. at 648. Then in *McIntyre*, 514 U.S. at 347, 115 S.Ct. 1511, the Supreme Court made clear that exacting scrutiny applies to any state regulation of advocacy in noncandidate elections like referenda.

that it was legitimate for a state to require sponsors of ballot initiatives to disclose to the State the names of proponents of the petition and the amount being spent. *See id.* at 647, 648. The Court approvingly identified that requirement as a way to inform voters of "the source and amount of money spent by proponents to get a measure on the ballot." *Id.* at 647. In *Citizens Against Rent Control v. City of Berkeley,* 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981), the Supreme Court had earlier struck down state limitations on money contributions to political committees supporting or opposing a ballot measure. In doing so, the Court observed that "[t]he integrity of the political system will be adequately protected if contributors are identified in a public filing revealing the amounts contributed...." *Id.* at 299–300, 102 S.Ct. 434. Both *Buckley II* and *Berkeley* involved issue-only elections; no candidate voting was involved. Together they amount to an unequivocal declaration that although there are First Amendment restrictions on what a state can do, a public filing requirement in an issue-only election is not wholly prohibited.[5]

■ The plaintiffs argue, however, that neither case supports a "registration" requirement. Registration is an ambiguous term; it can be more or less burdensome and might be crafted so as to require no more than the disclosure permitted by *Buckley II* and *Berkeley* —"I have spent or received this much and here I am." Registration, I conclude, is not *per se* prohibited.

## 2. Can Registration Be Required When the Major Purpose of the Person or Association to be Registered is Not the Passage or Defeat of the Ballot Question?

The plaintiffs also contend that only organizations whose major purpose is the passage or defeat of a ballot measure can be required to register. The State's position on this issue is more complicated, as I explain below.

■ As the plaintiffs argue, *Buckley I* narrowed the scope of the Federal Election Campaign Act because of First Amendment concerns. As a result, under the federal statute, general registration and disclosure requirements can now apply only to organizations that are under the control of a candidate or whose "major purpose" is the nomination or election of a candidate. *Buckley I,* 424 U.S. at 78, 96 S.Ct. 612. The first test—candidate control—does not apply here. On the second test, the State has conceded for purposes of this case that the November election in Maine is not the major purpose of either Paul Volle the individual or MRDA, the association.[6] But according to the State, that is not the end of the matter. The Supreme Court has held that individuals, and groups that are not political committees under the major purpose test of the federal statute, can nevertheless be required to report "(1) when they make contributions earmarked for political purposes or authorized or requested by a candidate or his agent, to some person other than a

---

5. In *Berkeley,* the Court also observed: "Here, there is no risk that the Berkeley voters will be in doubt as to the identity of those whose money supports or opposes a given ballot measure since contributors must make their identities known under § 112 of the ordinance, which requires publication of lists of contributors in advance of the voting." 454 U.S. at 298, 102 S.Ct. 434. *See also Vote Choice, Inc. v. DiStefano,* 4 F.3d 26, 31–33 (1st Cir.1993)(declining to find *per se* invalid a Rhode Island statute that required all political action committees to disclose their contributors).

6. Although the major purpose test can be used in assessing an artificial entity (lawyers are accustomed to articles of incorporation that specify purposes, and balance sheets and profit and loss statements are comfortably used in measuring activities) it makes little sense in dealing with an individual. For example, the fact that someone's housing expenditure is the major component of his household budget hardly makes housing his major purpose. The Supreme Court has never used the test in connection with an individual, so far as I am aware, and its discussion in *Buckley I,* 424 U.S. at 79–80, 96 S.Ct. 612, suggests that the major purpose test does not apply to an individual.

candidate or political committee, and (2) when they make expenditures for communications that expressly advocate the election or defeat of a clearly identified candidate." 424 U.S. at 80, 96 S.Ct. 612.

The State asserts that Maine's registration requirements are really only reporting or disclosure requirements of the sort approved in *Buckley I*, apply only to monies raised or spent for the express advocacy of the passage or defeat of a specific ballot measure and thereby comply with the language of *Buckley I* directed to organizations that are not political committees and individuals.[7] Thus, the Attorney General's Office argued at the hearing that an individual like Volle would have to report only the amounts he raised and spent for the ballot campaign. See also Defs.' Br. at 17.[8]

■ The Maine statute is written far more broadly than the Attorney General's Office would have it. First, as soon as the money threshold is passed, the registration requirement applies, and much more than disclosure of campaign fund-raising and expenditures is involved. *See* 21–A M.R.S.A. § 1053. If Volle spends $51, he *becomes* a political action committee under the statute and must then disclose the "names and addresses of the depositories in which funds of the committee are kept and the account numbers of each depository account." *Id.* at § 1053(3). If Volle— or anyone else who spends $51 on a lawn sign urging a particular vote on the ballot—chooses not to set up a separate committee or to establish separate bank accounts, it is hard to see how he can avoid disclosing all his bank accounts under section 1053. The same holds true for an

association and its bank accounts. Likewise, the statute requires that in the registration statement the "total assets of the committee [*i.e.,* Volle] available to influence elections" be itemized and disclosed. *Id.* at § 1053(5). The Attorney General's Office argues that this requirement would not apply to an individual, or would require disclosure of only the amounts Volle actually spent. But the clear language is to the contrary; all of Volle's assets are available to him to use as he chooses and must therefore be disclosed. In the case of an organization, all of its assets are likewise available for use as an owner/manager chooses and must be disclosed. Beyond the expenditure and fund-raising disclosures that the State argues can constitutionally be required, Volle must also appoint a treasurer even if he spends only $51 (and must appoint the treasurer before he spends the money). *See id.* at § 1054. Detailed records and receipts must be retained. *See id.* at § 1057. At least two reports must be filed in connection with the election, *see id.* at § 1059(2)(C), and if Volle or MRDA neglects to file a termination report, *see id.* at § 1061, then quarterly reports must also be filed, *see id.; id.* at § 1059(2)(A). Thus, Maine has far more extensive requirements than *Buckley I* suggests is permissible. Without a doubt, they would operate to deter spending in support of speech favoring or opposing ballot measures.

Essentially, the Attorney General's Office is asking the court to read into Maine's one-size-fits-all registration/disclosure statute two separate sets of rules: one set for political action committees

---

7. *Buckley I*'s language is directed at candidate elections, and there could be some debate whether the "major purpose" test applies to noncandidate elections. Aside from their argument that registration is *per se* prohibited in a noncandidate election (an argument I have rejected in section 1), the plaintiffs do not press the point, nor do the defendants.

8. The plaintiffs assert that they are not challenging the required disclosure of independent expenditures, the subject of this portion

of *Buckley I*, and of a separate Maine statutory provision, 21–A M.R.S.A. § 1019, the independent expenditure reporting requirement for candidate elections. (Section 1019 does not apply to noncandidate ballot measures; indeed, "independent expenditure" is a term that makes much less sense in the context of noncandidate elections.) But I take the Attorney General's argument to be that the logic of this portion of Buckley supports the position the State takes on the registration requirement.

whose major purpose is a ballot measure—they would have to report all of their activities; and a second set for individuals and organizations whose major purpose is not a ballot measure—they would have to report only campaign-related receipts, expenditures and assets. The statutory language simply will not bear this creative reading.

### 3. Can the Maine Statute Survive the First Amendment Challenge?

The specific answers to the parties' arguments as they have framed them, therefore, are that (1) states have some authority to require that the proponents of the passage or defeat of a ballot measure and the expenditures they make must be disclosed; (2) Volle and MRDA cannot constitutionally be subjected to the full panoply of registration and reporting requirements that *Buckley I* examined under the Federal Election Campaign Act; but under Supreme Court caselaw Maine can subject them (and others like them) to some carefully crafted mandatory disclosures.

Applying the "exacting scrutiny" the Supreme Court has called for, looking for an "overriding state interest" and assessing whether the statute is "narrowly tailored" to accomplish that interest, *McIntyre,* 514 U.S. at 347, 115 S.Ct. 1511, I conclude that Maine's registration statute goes considerably beyond what is permitted and is therefore unconstitutional as it applies to an individual like Paul Volle and an association like MRDA. As *Bellotti,* 435 U.S. at 790, 98 S.Ct. 1407, and *Buckley II,* 525 U.S. at ——, 119 S.Ct. at 648, recognized, corruption and the appearance of corruption are not really at stake in a referendum, where the electorate can assess the particular issue on the merits and need not worry about a candidate's being beholden

to a contributor on some future vote. But although *McIntyre,* 514 U.S. at 341–43, 115 S.Ct. 1511, refers enthusiastically to the Republic's tradition of anonymous pamphleteering, the Court has also recognized in *Berkeley,* 454 U.S. at 299–300, 102 S.Ct. 434, and *Buckley II,* 525 U.S. at ——, 119 S.Ct. at 647, 648, that the State has a legitimate interest in letting the voters know where the money comes from. That interest is not as significant as the corruption concern, however, *see McIntyre,* 514 U.S. at 356, 115 S.Ct. 1511; and, more importantly, can be achieved by simple disclosure requirements—as Maine has demonstrated in its independent expenditure statute for candidate elections. *See* 21–A M.R.S.A. § 1019.[9] Under that statute, Maine has developed a simple form for such a disclosure. *See* Ex. 1. In contrast, the panoply of registration requirements Maine has implemented for noncandidate ballot measures is simply too broad under the First Amendment for speakers like Paul Volle and MRDA. I have looked carefully at the Maine statute, but I cannot limit it so as to survive constitutional attack, because its provisions are integrated one with another. If Maine wishes to preserve some limited regulatory oversight of ballot measure advocacy fund-raising and spending, as I have suggested it can under current Supreme Court precedents, then there are legislative decisions to be made that involve the definition of political action committee (or rejection of the category), what information is to be reported and when. There are no separate provisions in this statute that I can segregate out from the rest and uphold as constitutional as they apply to Volle and MRDA.

### CONCLUSION

Accordingly, the plaintiffs' request for declaratory judgment[10] is GRANTED as fol-

---

9. A third state interest is sometimes recognized—disclosure to aid the state in its enforcement efforts where there are dollar limitations. *Buckley I,* 424 U.S. at 67–68, 96 S.Ct. 612. There are no dollar limitations to enforce, however, in noncandidate elections and that state interest accordingly is not present here.

10. I do not at this time grant injunctive relief because I have been given no indication that the State will decline to comply with this court's declaratory judgment. If I am wrong, the plaintiffs are obviously free to revisit the matter. I also do not declare the statute unconstitutional on its face. *See Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 504, 105

lows: It is hereby adjudged that 21–A M.R.S.A. §§ 1052(5)(A)(3) and (4) are unconstitutional as they apply to Volle and MRDA. The Clerk shall enter judgment accordingly.

So ORDERED.

S.Ct. 2794, 86 L.Ed.2d 394 (1985). As I have said in text, the plaintiffs' arguments that the State can never require registration are incorrect; there may well be some political action committees to whom this statute can constitutionally apply.