The Honorable Ed Wilkinson State Representative P.O. Box 610 Greenwood, AR 72936-0610
Dear Representative Wilkinson:
I am writing in response to your request for my opinion on the following question, which you indicate has been posed by one of your constituents:
 Can the legislature constitutionally limit time periods of paid media campaigning before elections for candidates and/or ballot titles?
RESPONSE
In my opinion, the answer to your question is "no."
The First Amendment to the U.S. Constitution, which applies to the states through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech, or of the press." Article 2, § 6 of the Arkansas Constitution further provides in pertinent part:
 The liberty of the press shall forever remain inviolate. The free communication of thoughts and opinions is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects, being responsible for the abuse of such right.
In Bigelow v. Virginia, 421 U.S. 809, 829 (1975), the United States Supreme Court observed:
 We know from experience that "liberty of the press is in peril as soon as the government tries to compel what is to go into a newspaper." 2 Z. Chafee, Government and Mass Communications, 633 (1947). The policy of the First Amendment favors dissemination of information and opinion, and "[t]he guarantees of freedom of speech and press were not designed to prevent `the censorship of the press merely, but any action of the government by means of which it might prevent such free and general discussion of public matters as seems absolutely essential. . . .' 2 Cooley, Constitutional Limitations, 886 (8th ed.)." Curtis Publishing Co. v. Butts, 388 U.S. 130, 150 (1967) (opinion of Harlan, J.).
The constitutional principles applicable to campaign contributions and expenditures were articulated at length in the landmark case of Buckleyv. Valeo, 424 U.S. 1, 14 (1976), which rigorously tested the constitutionality of the Federal Election Campaign Act of 1971 ("FECA"),18 U.S.C. § 608 et seq. The Supreme Court declared in Buckley that political "contribution and expenditure limitations operate in an area of the most fundamental First Amendment activities." The Court's discussion of such activities reflects the highest concern to preserve the rights of political free speech and association:
 Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order "to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Roth v. United States, 354 U.S. 476, 484 (1957). Although First Amendment protections are not confined to "the exposition of ideas," Winters v. New York, 333 U.S. 507, 510 (1948), "there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs, . . . of course includ[ing] discussions of candidates. . . ." Mills v. Alabama, 384 U.S. 214, 218 (1966). This no more than reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964). In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation. As the Court observed in Monitor Patriot Co. v. Roy, 401 U.S. 265, 272 (1971)," it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office."
 The First Amendment protects political association as well as political expression. The constitutional right of association explicated in NAACP v. Alabama, 357 U.S. 449, 460 (1958), stemmed from the Court's recognition that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." Subsequent decisions have made clear that the First and Fourteenth Amendments guarantee "`freedom to associate with others for the common advancement of political beliefs and ideas,'" a freedom that encompasses "`[t]he right to associate with the political party of one's choice.'" Kusper v. Pontikes, 414 U.S. 51, 56, 57
(1973), quoted in Cousins v. Wigoda, 419 U.S. 477, 487 (1975).
 . . . In contrast to O'Brien [United States v. O'Brien, 391 U.S. 367
(1968)], where the method of expression was held to be subject to prohibition, Cox [Cox v. Louisiana, 379 U.S. 559 (1965)], Adderley
[Adderley v. Florida, 385 U.S. 39 (1966)], and Kovacs [Kovacs v. Cooper, 336 U.S. 77 (1949)] involved place or manner restrictions on legitimate modes of expression — picketing, parading, demonstrating, and using a soundtruck. The critical difference between this case and those time, place, and manner cases is that the present Act's contribution and expenditure limitations impose direct quantity restrictions on political communication and association by persons, groups, candidates, and political parties in addition to any reasonable time, place, and manner regulations otherwise imposed.
 A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached. . . .
 . . . In the free society ordained by our Constitution it is not the government, but the people — individually as citizens and candidates and collectively as associations and political committees — who must retain control over the quantity and range of debate on public issues in a political campaign.
Id. at 14-15, 18-19, 57 (footnotes omitted).
Because of the importance of the First Amendment interests involved, theBuckley Court declared that any government infringement thereof can be sustained only "if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement" of a First Amendment interest. Id. at 25; accord Eu v. SanFrancisco County Democratic Central Committee, 489 U.S. 214, 225 (1989) (holding that statute must serve a compelling government interest and be sufficiently narrowly tailored); Baldwin v. Redwood City, 540 F.2d 1360
(9th Cir. 1976) (restriction on quantity of campaign speech by individuals, groups and candidates can be upheld only if governmental interests advanced in support satisfy exacting scrutiny applicable to limitations on core First Amendment rights of political expression). It is the state's burden to make such a showing in the face of a challenge.First National Bank Of Bost v. Bellotti, 435 U.S. 765, 786 (1978).
Your constituent has not identified any compelling government interest that would warrant restricting paid media campaigning, and I frankly doubt any that was offered would pass constitutional muster. In Buckley,
the Court identified as the primary compelling interest in limiting campaign contributions the prevention of "corruption and the appearance of corruption spawned by the real or imagined coercive influence of large financial contributions on candidates' positions and on their actions if elected to office." 424 U.S. at 25. See also Citizens Against RentControl v. Berkeley, 454 U.S. 290, 296-97 (1981) ("Buckley identified a single narrow exception to the rule that limits on political activity were contrary to the First Amendment. The exception relates to the perception of undue influence of large contributors to a candidate.")[1]
Although restricting the period of media campaigning might in theory subvert the advantage of powerful, moneyed interests, since the limited range of media might be glutted to the point of saturation in an abbreviated campaign, this possibility strikes me as practically remote and an insufficient rationale for severely restricting political speech. Moreover, legislation of the sort set forth in FECA, which was the subject of constitutional review in Buckley, and subchapter 2, chapter 6, title 7 of the Arkansas Code can impose significant restrictions on campaign financing, thus addressing the evil identified in Buckley in a manner far less restrictive of core First Amendment rights.[2] As a practical matter, then, the effect of the proposed legislation would not be to restrict the influence of large political contributors, but rather to restrict the quantity of political speech by various groups or individuals within the restrictions of FECA. Any such restriction is flatly impermissible under the Buckley standard.
Significantly, I have found only two instances of a state's attempting to legislate a time restriction on paid media campaigning, and each was declared unconstitutional on the authority of Buckley. In Sadowski v.Shevin, 345 So. 2d 330 (1977), the Supreme Court of Florida struck a statute that prohibited any media advertising or campaigning in rented halls on behalf of a candidate before the candidate had filed qualification papers and had paid qualification fees and party assessments. The effect of the statute was to preclude a prospective candidate from conducting the proscribed activities until 63 days before the first primary — a point following adjournment of the regular legislative session upon which the candidate wished to comment. Id. at 331. The Court rejected the conclusion of the Florida Court of Appeals that the statute "regulates only the time and manner of political communication by the candidates and does not impose quantity restrictions on a candidate's communication." Sadowski v. Shevin, 351 So. 2d 44, 46
(1976). The Supreme Court ruled as follows:
 We hold . . . that the Section 106.15(1) regulation of election activities is a restraint of free speech and a restriction on the quantity of a candidate's communication and diversity of political speech contrary to the dictates of the Supreme Court of the United States in Buckley v Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659
(1976). It effectually constitutes a limitation on campaign spending.
* * *
 . . . The statute, as it is before us, denies to candidates their fundamental right to speak to political issues and to advocate their candidacy by making use of advertising in various effective media and in rented halls until they are within the described political season. The fact that they may spend unlimited amounts for such purposes in the designated time period does not cure the infirmity nor make the speech restraints any more acceptable.
345 So. 2d at 332.[3]
In National Right to Life Political Action Committee v. McGrath,982 F. Supp. 694 (D. Mont. 1997), a federal district court struck a statute that prohibited political advertising on election day. The court ruled that the statute was a content-based restriction because it was directed at political speech. Id. at 696. The court further noted: "TheFirst Amendment `has its "fullest and most urgent application" to speech uttered during a campaign for political office.'" Id. at 697 (quoting Euv. San Francisco County Democratic Central Committee, 489 U.S. 214,222-23 (1989), which, in turn, quoted Monitor Patriot Company v. Roy,401 U.S. 265-272 (1971)). The court ruled that the statute at issue was not a permissible "time, place and manner" restriction of the sort at issue inBurson v. Freeman, 504 U.S. 191 (1992) (approving prohibition of campaigning within 100 feet of a polling place), but rather an unwarranted infringement on speech at a particularly "important time for free interchange of political speech and ideas." 982 F. Supp. at 697,698. Although the proposed restriction at issue in the present case presumably would not ban advertising on or shortly before election day, in my opinion the more protracted proposed prohibition of political speech in this case makes it even more constitutionally offensive than the statute stricken in McGrath.
In Arkansas Right to Life State Political Action Committee v. Butler,29 F. Supp. 2d 540 (W.D. Ark. 1998), an Arkansas district court struck as unconstitutional a provision of Arkansas Initiated Act I of 1996, popularly known as the "Campaign Contribution Limits and Disclosure Act," prohibiting legislators and certain constitutional officers from accepting contributions during and 30 days before or after any regular session of the General Assembly. The challenged legislation is codified at A.C.A. §7-6-203(g)(1). The court began its inquiry by noting that "[w]hen a law burdens political speech we must apply strict scrutiny, and uphold the restriction only if it is narrowly tailored to serve a compelling state interest."[4] Id. at 551. The Court noted that while preventing corruption qualifies as a compelling state interest, the state had not demonstrated any actual corruption to be remedied. Id. The Court further concluded that the statute was not narrowly tailored to serve a compelling state interest because it was both under- and overinclusive. It was underinclusive because "corruption can occur any time" and overinclusive because "only large contributions pose a threat of corruption." Id. at 553. See Russell v. Burris, 146 F.3d 563 (8th Cir. 1998) (Arkansas legislation limiting direct contributions unconstitutional because not narrowly tailored to avoid corruption or perception of corruption and undue influence). The proposed legislation in the present case suffers from precisely the same constitutional infirmities and would doubtless be stricken for the reasons expressed inButler.[5]
My opinion that the proposed legislation is unconstitutional applies all the more strongly to the durational restriction on paid media campaigning relating to ballot issues. In Buckley, the Supreme Court declared that FECA's expenditure limits covered only communications that "in express terms advocate the election or defeat of a clearly identified candidate."424 U.S. at 44. In FEC v. Massachusetts Citizens For Life, Inc.,479 U.S. 238, 249 (1986), the Court noted: "Buckley adopted the `express advocacy' requirement to distinguish discussion of issues and candidates from more pointed exhortations to vote for particular persons." The rationale for this distinction is obviously that an individual large contribution to a particular candidate raises the threat of corruption, whereas, in theory at least, the threat of a quid pro quo is considerably less if the expenditure is devoted only to exhortations on a particular issue. Issue advocacy thus merits a particularly strong degree of constitutional protection. As a federal district court noted in discussing Buckley and its progeny:
 According to the United States Supreme Court, advocacy concerning referendum-type elections of this sort involves "core political speech," and state regulation of election advocacy accordingly requires "exacting scrutiny" to ensure that the regulation is "narrowly tailored" to an "overriding state interest." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 347, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995).
Volle v. Webster, 69 F. Supp. 2d 171, 172 (D. Maine 1999). The court summarized post-Buckley pronouncements on ballot titles as follows:
 Only in later cases did the Supreme Court deal with ballot measures other than candidate elections. In First National Bank of Boston v. Bellotti, 435 U.S. 765, 790, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), it recognized that votes on ballot measures involve less risk of corruption that would justify state regulation than do candidate elections where there is concern to avoid a quid pro quo arrangement between a candidate and the contributor.
 "Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue." Id. at 790, 98 S.Ct. 1407 (citations and footnote omitted); accord Buckley II [Buckley v. American Constitutional Law Foundation], 525 U.S. at ___, 119 S.Ct. at 648 [1999].
69 F. Supp. 2d at 173 n. 4. See also, West Virginians for Life, Inc. v.Smith, 960 F. Supp. 1036 (S.D. W.Va. 1996) (declaring unconstitutional statute creating presumption that voter guide or scorecard issued within 60 days of election is "express advocacy," not "issue advocacy," regardless of content). It is thus my opinion that the proposed restriction is clearly unconstitutional with respect to the limitation on paid media campaigning regarding ballot issues.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] In Nixon v. Shrink Missouri Government PAC, ___ U.S. ___ (2000), the Court again stressed the importance of avoiding even the appearance of impropriety: "Leave the perception of impropriety unanswered, and the cynical assumption that large donors call the tune could jeopardize the willingness of voters to take part in democratic government."
[2] Although the limitations on contributions to candidates set forth in A.C.A. § 7-6-203 have been successfully challenged as unconstitutionally low, see Russell v. Burris, 146 F.3d 563 (8th Cir. 1988), it is clearly the case that constitutionally acceptable limits can be imposed through legislation. See Nixon v. Shrink Missouri GovernmentPAC, ___ U.S. ___ (2000) (reversing decision striking Missouri limits as unconstitutionally low). In the present case, given the availability of significant statutory restrictions, it would appear that the proposal to impose time restrictions on paid media advertising is motivated by little more than an interest in avoiding a sustained barrage of what often seems nothing more than political bromides. Understandable though this interest might be, it is facially insufficient to justify abridging coreFirst Amendment rights that the Supreme Court discusses with a reverence verging on awe, particularly in light of the broad range of choice in print media and the ready accessibility of the remote control.
[3] The constitutional principles underlying this ruling have also been applied to foreclose judicial interference with political speech through advertising. Republican Party of Florida v. Florida ElectionsCommission, 658 So. 2d 653 (Fla.App. 1995) (issuance of injunction of broadcasts of political advertisements in final weeks of election campaign on claim that advertisements were illegal campaign contributions was unconstitutional prior restraint of speech).
[4] In Nebraska Press Assn. v. Stuart, 427 U.S. 539, 562 (1976), the Supreme Court quoted with approval Learned Hand's memorable formula for how this test should be applied:
 We turn now to the record in this case to determine whether, as Learned Hand put it, "the gravity of the `evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger." United States v. Dennis, 183 F.2d 201, 212 (CA2 1950), aff'd, 341 U.S. 494 (1951); see also L. Hand, The Bill of Rights
58-61 (1958).
[5] The case law abounds with instances of courts similarly striking campaign time restrictions unrelated to paid media advertising. See,e.g., Outdoor Systems, Inc. v. City of Lenexa, Kansas,67 F. Supp. 2d 1231 (D. Kan. 1999) (municipal ordinance requiring that political campaign signs be removed within seven days after election or campaign issue has been decided was content-based speech restriction not required to further compelling state interest and narrowly tailored to achieve end, and was invalid under First Amendment and state constitution);Curry v. Prince George's County, Maryland, 33 F. Supp. 2d 447 (D. Md. 1999) (declaring unconstitutional a ban on political signs for all but 45 days before and 10 days after elections); Toledo Area AFL-CIO Council v.Pizza, 154 F.3d 307 (6th Cir. 1998) (striking legislation prohibiting corporations and unions from soliciting contributions from employees and members more than four times annually); Zeller v. The Florida Bar,909 F. Supp. 1518 (N.D. Fla. 1995) (striking prohibition against contributions to judicial campaigns within one year of elections); ShrinkMissouri Government PAC v. Maupin, 922 F. Supp. 1413 (E.D. Mo. 1996) (ban on contributions during legislative session not tailored to prevent corruption or appearance of corruption, since ban extended to non-incumbents and prohibited contributions by candidates to their own campaigns); Town of Lantana v. Pelczynski, 303 So. 2d 326 (Fla. 1974) (striking requirement that candidate notify opponent of any charge made within seven days of election); cf. Gable v. Patton, 142 F.3d 940 (6th
Cir. 1998), cert. denied 525 U.S. 1177 (1999) (approving 28-day pre-election restriction on contributions to gubernatorial candidates who have accepted public funds and striking the restriction on candidates who have not).